277 A.2d 291.

STATE *vs.* LOUIS A. CAMERLIN.

MAY 17, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

ROBERTS, C. J. This is an indictment charging Anthony J. Souza and Louis A. Camerlin with the murder of Carle-

ton MacDougald. The defendants were tried to a jury in the Superior Court and were found guilty of murder in the first degree. The defendant Camerlin is now in this court prosecuting a bill of exceptions.

The record discloses that late in the evening of August 4, 1964, two young men masked with handerchiefs entered a package store operated by the deceased on Park Avenue in the city of Cranston. One of the intruders carried a gun. They demanded money from MacDougald and, upon his refusal, the man carrying the gun shot MacDougald, who died shortly thereafter from gunshot wounds. It further appears that Michael J. Smith worked as a part-time helper for MacDougald and witnessed the entire incident. About a year later defendant Camerlin and Souza were apprehended and indicted for the murder.

In this court defendant Camerlin contends that it was reversible error to have admitted into evidence the testimony of Mrs. Gale Souza, former wife of Anthony Souza, Camerlin's codefendant. Mrs. Souza, testifying on behalf of the state, testified that her former husband told her during the course of a conversation that he and Camerlin had committed the MacDougald murder. She stated that her former husband had joined her in the living room of her home and showed her a newspaper story about the killing of MacDougald and had asked her to read it. When she had completed reading the story, she asked her husband, "What about it?" She then testified that her former husband had replied, "That was Louis and I that did it."[1]

The defendant thereupon objected to Mrs. Souza's testi-

---

[1]We are not here concerned with the recent decision of the United States Supreme Court in *Dutton* v. *Evans*, 400 U. S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213. In that case the Court upheld as constitutional in the circumstances an application of a Georgia statute providing for an exception to the rule on the exclusion of hearsay evidence by authorizing the introduction of an out-of-court statement that was made during the concealment phase of a conspiracy.

mony that her husband had admitted that he and Camerlin had committed the crime and moved that "any reference to Louis be stricken." The court, without acting upon this motion, addressed the jury, saying: "Let me say, for the benefit of the jury now, that anything that was said by Anthony Souza outside the presence of Louis Camerlin, certainly cannot be attributed to Louis Camerlin, and the jury must realize that, in all of its hearing of the testimony, that this cannot apply to Louis Camerlin." At the conclusion of the cautionary instruction defendant again moved that any reference to Louis be stricken, and at this time the court said, "The motion is granted."

Mrs. Souza continued to testify as to the discussion between herself and her former husband concerning the commission of the crime. After testifying that he remained there for dinner and that he went out and subsequently returned and began to watch T.V. in the living room, she testified that he told her all about the night before, stating that they went out walking, looking for a place, and that by "they" she meant "Him and Louis." At this point there was objection, and the court overruled the objection.

She then further testified that Camerlin and her husband went out walking, "looking for a place to break in." She stated, "They came across this liquor store, they went in, they had handkerchiefs across their mouths. Louis held the gun on the guy and asked where the money was. My husband went to the cash register." At this point defendant moved that this answer be stricken, and the motion to strike was denied.

Mrs. Souza further testified that her former husband had told her that the deceased had laughed at Louis so Louis shot him and, upon being informed that there was no money, he shot him again. Later in her testimony Mrs. Souza repeated her prior testimony that her husband had

told her, when she first learned of the crime through the newspaper, "That was Louis and I that did it." There appears to be nothing in the transcript that any of this evidence was stricken from the record.

It is important to note that Mrs. Souza, later in the course of the trial, testified to a conversation that she had had with defendant, Louis Camerlin, relating to the killing of MacDougald. In this respect she testified that she had met Camerlin in the kitchen of her sister-in-law's home and asked him if he was proud of what he had done. Camerlin, she testified, said: "Eh! the guy laughed at me." She further testified that she then asked him, "If I laughed at you, would you shoot me too?" Without answering, Camerlin laughed and walked away.

In his subsequent charge the trial justice further cautioned the jury that Mrs. Souza's testimony that her husband had told her that he had participated with Camerlin in the killing of MacDougald could be used by the jury as competent evidence only on the question of the guilt of Souza. He emphasized that it was not competent evidence on the issue of the guilt of Camerlin. In other words, it is clear that the trial justice was instructing the jury in accordance with the rule laid down in *Delli Paoli* v. *United States*, 352 U. S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278.

Under the rule stated in *Delli Paoli* an admission made by one defendant could be submitted to the jury when accompanied by an appropriate limiting instruction that it is to be considered by the jury solely in connection with the determination of the guilt or innocence of him who made the admission and that it is not to be considered on the question of the guilt of a codefendant. The theory underlying this rule rested on the Court's refusal to accept the argument that a jury would lack the ability to follow such limiting instructions when given to it, that is, to

disregard the admissions of the defendant who made them when considering the question of the guilt of a codefendant.

However, the United States Supreme Court in *Bruton v. United States*, 391 U. S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, specifically overruled *Delli Paoli*. The Court said at 126, 88 S.Ct. at 1622, 20 L.Ed.2d at 479: "We have concluded, however, that *Delli Paoli* should be overruled. We hold that, because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt, admission of Evans' confession in this joint trial violated petitioner's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment. We therefore overrule *Delli Paoli* and reverse."

The Court, in overruling *Delli Paoli*, conceded that it was not unreasonable to conclude that in many such instances a jury could and would follow a trial judge's instructions to disregard a codefendant's admissions when judging the guilt of the defendant. However, the Court went on to say at 135, 88 S.Ct. at 1627, 20 L.Ed.2d at 485: "* * * there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. * * * The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination. It was against such threats to a fair trial that the Confrontation Clause was directed." In short, the Court in *Bruton* took the position that it was unable to accept the theory of limiting instructions as to the admission of such statements constituting an adequate substitute for the petitioner's constitutional right to cross-examination.

It is true that *Bruton* was decided in May, 1968, some

two years after the trial in the instant case, which was held in April, 1966. However, the *Bruton* rule was given retroactivity in *Roberts* v. *Russell*, 392 U. S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100. It follows, then, that it was error to admit into evidence at the trial of Camerlin the admissions made by Anthony Souza to his wife.

The state contends, however, that despite the proposition laid down in *Bruton* the admission of the testimony of Mrs. Souza concerning the participation of her husband and defendant Camerlin in the crime was harmless error. In so doing they rely upon *Harrington* v. *California*, 395 U. S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284. In *Harrington* the Court relied upon a view it took in *Chapman* v. *California*, 386 U. S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, where the Court said that while some constitutional rights are so basic to a fair and impartial trial that their infraction can never be treated as harmless error, not all errors committed in the course of trial which violate the Constitution automatically call for a reversal of the verdict. The Court went on to say, still referring to *Chapman*, that "* * * 'before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.'" *Id.* at 251, 89 S.Ct. at 1727, 23 L.Ed.2d at 286.

It is true that in *Harrington* the Court found the admissions to be harmless, but the facts presented the Court in *Harrington* with a far greater preponderance of evidence than in the case before us. It is significant that in *Harrington* the Court established a severe test before the admission of a codefendant's confession could be found to be harmless error. The Court said at 254, 89 S.Ct. at 1728-29, 23 L.Ed.2d at 288: "We do not suggest that, if evidence bearing on all the ingredients of the crime is tendered, the use of cumulative evidence, though tainted, is harmless error. Our decision is based on the evidence in this record. * * *

It is so overwhelming that unless we say that no violation of *Bruton* can constitute harmless error, we must leave this state conviction undisturbed."

Obviously, *Harrington* opens the door for the determination of an inadmissible confession as harmless error, a federal constitutional error which normally requires reversal. The issue in the case before us, then, resolves into a consideration of whether the admission of Mrs. Souza's statement was harmless error in the light of the entire evidentiary presentation. The state relies principally upon testimony of an eyewitness and Mrs. Souza. It is to be recognized that the effect of Mrs. Souza's testimony was enhanced by the fact that part of her testimony consisted of a conversation with defendant Camerlin, which in reality was tantamount to an admissible confession on his own part.

The question, then, is whether the evidence establishes Camerlin's guilt so overwhelmingly that we may conclude that this violation of the rule stated in *Bruton* constituted harmless error. In this case not only did Souza's statement to his wife involve Camerlin in the execution of the crime but Camerlin's own statement to Souza's former wife constitutes a compelling inference of his presence at the scene of MacDougald's murder. In addition to this, there is an abundance of testimony from the eyewitness, Michael Smith, which corroborates the statement of Mrs. Souza as to the demand for money and the shooting, which is consistent with his presence at the scene. Smith testified, as Camerlin admitted to Mrs. Souza, that when he demanded the money, MacDougald smiled at him, a procedure which Camerlin described as laughing at him, whereupon he stated that he had shot MacDougald.

In *People* v. *Charles*, 66 Cal.2d 330, 425 P.2d 545, 57 Cal. Rptr. 745, the Supreme Court of California was presented with a question similar to that presented in this case. The

*Bruton* case had not been decided as of the decision in *Charles,* but that court was operating under a state decision setting out the same requirements as *Bruton.* The California court, following a line of similar holdings, stated at 338, 425 P.2d at 550, 57 Cal. Rptr. at 750: "* * * we consider crucial the fact that each defendant's case was completely shattered by his own detailed confession, corroborated by the eyewitness testimony of the robbery victim. In this setting, the fact that each defendant was also implicated by his codefendant's confession cannot realistically have contributed to either conviction." See also *People* v. *Dorado,* 62 Cal.2d 338, 398 P.2d 361, 42 Cal. Rptr. 169, and *In re Lara,* 1 Cal.3d 486, 462 P.2d 380, 82 Cal. Rptr. 628.

This case presents a difficult question as to whether the evidence against Camerlin was so weighty as to render the admission of Mrs. Souza's statement harmless error. However, we think that the evidence arising out of the testimony of the eyewitness, Smith, and of the statement that Camerlin made to Mrs. Souza was sufficient to persuade the jury beyond a reasonable doubt that Camerlin was guilty of the crime with which he was charged. In these circumstances we are compelled to conclude that if it was error to admit the statement of Mrs. Souza concerning her husband's admission, that error is rendered harmless by the bulk and nature of the state's case, including Camerlin's own admissions made to Mrs. Souza.

We turn then to the contention of Camerlin concerning the constitutionality of the lineup at which he was identified by Smith, the eyewitness. The defendant argues vigorously, in the first place, that the standards of *United States* v. *Wade,* 388 U. S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and *Gilbert* v. *California,* 388 U. S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, should be applied to this lineup even though it occurred before those rulings. However,

we do not agree with this contention, it being clear that retroactive application of *Wade* and *Gilbert* is precluded by the decision of the Court in *Stovall* v. *Denno,* 388 U. S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.

The defendant goes on to argue, in the alternative, that the lineup in which Camerlin was identified by Smith was violative of his rights under the exception in *Stovall* which precludes the establishment of "unnecessarily suggestive" circumstances in a lineup. This court has adopted the *Stovall* exclusion against retroactive application of *Wade* and *Gilbert* in *State* v. *Nordstrom,* 104 R. I. 480, 244 A.2d 842. From that case we are constrained to conclude that the right to counsel and other constitutional safeguards required by the rule laid down in *Wade* and *Gilbert* do not apply here, since the lineup in question occurred before those decisions were made.

The determinative question here depends upon our consideration of the language set out in *Stovall* v. *Denno, supra,* at 302, 87 S.Ct. at 1972, 18 L.Ed.2d at 1206: "* * * a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it * * *." We have considered this language in *State* v. *Wright,* 105 R. I. 556, 253 A.2d 593, and *State* v. *Mandarelli,* 105 R. I. 696, 254 A.2d 738.

While the record discloses that Smith had identified Souza in the office of the Attorney General while Souza was alone, the record discloses that Smith some days later identified Camerlin at the Cranston Police Headquarters in a lineup consisting of three men, all of whom, accord- to Smith, appeared to be of the same age and of the same general build. The record discloses also that the witness, Smith, had had a rather substantial opportunity to observe each of the defendants at the time of the robbery and that he had attended at least 30 lineups before he identified defendant in the lineup at Cranston Police Head-

quarters. As we have already noted, the lineup consisted of two men in addition to defendant, all of similar build and description. Nowhere in the record is it suggested that anything was done to single out Camerlin from the other two men, and, therefore, we are unable to conclude that any of the circumstances under which the lineup occurred were within the prohibition set out in *Stovall* as "unnecessarily suggestive."

In *State* v. *Wright, supra,* this court held that an initial lineup of two men for a witness to make identification was not violative of due process requirements. In the case before us Camerlin certainly had a greater protection than that which the defendant had in *State* v. *Wright,* and it is our conclusion that there was no violation of Camerlin's rights under *Stovall* in the conduct of the lineup at the Cranston Police Headquarters at which he was identified.

The exceptions of the defendant are overruled.

Motion to reargue denied.

*Herbert F. DeSimone,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, *Scott K. Keefer,* Special Asst. Attorney General, for plaintiff.

*Charles J. Rogers, Jr.,* for defendant.