292 A.2d 214.

STATE *vs.* ANTHONY JOSEPH SOUZA.

JUNE 22, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

262

ROBERTS, C. J. This is an indictment charging Anthony Joseph Souza and Louis A. Camerlin with the murder of Carlton G. MacDougald. The defendants were tried to a jury in the Superior Court and were found guilty of murder in the first degree. The defendant Souza is now prosecuting a bill of exceptions in this court.[1]

The evidence discloses that late in the evening of August 4, 1964, two young men, their faces partially masked with handkerchiefs and one of whom carried a gun, entered a package store on Park Avenue in the city of Cranston operated by Mr. MacDougald. In the store at that time was Michael J. Smith, then 14 years of age, who was employed by Mr. MacDougald as a part-time helper about the store. According to information given the police by Smith, the armed intruder demanded that Mr. Mac-Dougald tell him where the money was. Smith further stated that Mr. MacDougald smiled, and the armed intruder shot him. The other intruder went to the cash register, shoving Smith aside on his way, and found no money therein. The armed intruder then demanded that Mr. MacDougald tell him where the money was hidden. Mr. MacDougald made no reply, and the armed intruder

---

[1]The defendant Camerlin prosecuted a bill of exceptions in this court, all of which were overruled. *See State* v. *Camerlin*, 108 R. I. 524, 277 A.2d 291 (1971).

fired two more shots into the body of Mr. MacDougald. The intruders then left the store, and Smith called the police for assistance. Mr. MacDougald was taken to a hospital, where he died shortly after admission.

Approximately a year later defendants Camerlin and Souza were apprehended and indicted for the murder of MacDougald. Shortly after his apprehension Souza, on July 28, 1965, was committed to the Men's Reformatory as a deferred sentence violator. On that same day he was taken to the office of the Attorney General in Providence, where Michael J. Smith identified him as one of the two men who had entered the store on the night of the slaying.

It appears from the evidence that Smith's identification of Souza at the Attorney General's office was not made by way of a lineup but was accomplished by a confrontation between the two. Upon his arrival at the Attorney General's office, Smith was taken to a room from which, by the use of a one-way mirror, he could look into an adjoining room. Souza was sitting on a chair in that room, and Smith indicated in his statement that Souza looked like one of the men involved and, in particular, the one who had pushed him aside as he was going toward the cash register. He stated also that Souza was not the one who did the shooting.

Smith was taken into the adjoining office, where he confronted Souza. His statement again indicates that this looked like the man who had gone to the cash register and pushed him aside on the night of the slaying. Thereafter, Souza was required to hold a handkerchief over the lower portion of his face in the same manner as did the intruders who had entered the store on the night of the crime. After viewing Souza in this posture, Smith again stated that defendant definitely was one of the men involved but that he was not the one who had the gun. He stated that Souza had pushed him aside in going to the

cash register and had taken a gallon jug of wine from a shelf as he ran out of the store after MacDougald had been shot.

The defendant in this court contends, among other things, that the pretrial identification made by Smith at the Attorney General's office was constitutionally impermissible, having been conducted, as it was, without notice to and in the absence of his attorney. In so arguing, he relies on the rule stated in *United States* v. *Wade,* 388 U. S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), that pretrial procedures made for the purpose of identifying an accused for the purposes of prosecution and trial are constitutionally impermissible under the sixth amendment in the absence of counsel.

The Court in *Wade* stated that the sixth amendment has been construed to guarantee the assistance of counsel at any critical stage of the proceedings. The sixth amendment, in pertinent portion, reads: "In all criminal prosecutions the accused shall enjoy the right * * * to have the assistance of counsel for his defence." It is clear from the very wording of the guarantee of the sixth amendment that it contemplates the assistance of counsel whenever that is necessary to assure a meaningful defense. The Court noted that it is only with the presence of counsel at such critical stages of the case as confrontations made for identification at trial that we can be assured that the interests of the accused "* * * will be protected consistently with our adversary theory of criminal prosecution." *Id.* at 227, 87 S.Ct. at 1932, 18 L.Ed.2d at 1157.

However, in this case the confrontation during which Smith identified defendant took place on July 28, 1965. The *Wade* case, on the other hand, was decided on June 12, 1967, or almost two years after the identification procedure took place in the instant case. The United States Supreme Court in *Stovall* v. *Denno,* 388 U. S. 293, 87 S.Ct.

1967, 18 L.Ed.2d 1199 (1967), held that the rule stated in *Wade* need not be applied retroactively. Since then we have consistently refused to give retrospective application to that rule. See *State* v. *Camerlin*, 108 R. I. 524, 532, 277 A.2d 291, 295 (1971); *State* v. *Wright*, 105 R. I. 556, 253 A.2d 593 (1969).

The defendant, as we understand him, is contending that inasmuch as he repeatedly requested that his counsel be present during the confrontation in the Attorney General's office and because an attempt to reach his counsel by telephone was unsuccesful, we should apply the rule in *Wade* retroactively. However, such circumstances are not persuasive that we should make an exception to our consistent refusal to apply *Wade* retroactively.[2]

In *Stovall* v. *Denno, supra,* the United States Supreme Court held that even though a petitioner was not entitled to an application of *Wade* in his case, he would be entitled to relief on his claim that in any event the confrontation conducted in his case was so unnecessarily suggestive and conducive to irreparable mistaken identification that he had been denied due process of law under the fourteenth amendment. The Court said at 302, 87 S.Ct. at 1972, 18 L.Ed.2d at 1206: "This is a recognized ground of attack upon a conviction independent of any right to counsel claim." The Court in *Stovall* further noted that the practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned. However, it noted that the violation of due process of law in the conduct of such confrontations depends upon the "totality of the circumstances surrounding it."

Considering the circumstances surrounding the confron-

[2]In view of this conclusion we need not consider now the apparent limitation on the *Wade* rule in *Kirby* v. *Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972).

tation in this case in their totality, it is our opinion that it was unnecessarily suggestive and patently conducive to a mistaken identification and so violated the concept of fundamental fairness in our adversary system that it was violative of defendant's fourteenth amendment right to due process of law. Having reached this conclusion, it is unnecessary for us to extend this opinion by further discussion of the circumstances surrounding the confrontation in the office of the Attorney General.

The significant circumstance in this case is that the state at trial had Smith make an in-court identification of defendant Souza. The identification made at the confrontation in the Attorney General's office, as we have already ruled, was constitutionally tainted in that it violated defendant's fourteenth amendment right to due process of law. Consequently, it would be reversible error to admit into evidence Smith's identification of defendant if it were based upon his observations made during the confrontation in the Attorney General's office. Ordinarily such an error would require that the conviction of the defendant be reversed and that a new trial be ordered at which the evidence relating to the identification at the confrontation would be excluded.

However, an exhaustive analysis of the rule stated in *Wade* and most recently applied by this court in *State* v. *Beaulieu,* 110 R. I. 113, 290 A.2d 850 (1972), discloses that an in-court identification may properly be made to a jury even though the pretrial identification is constitutionally tainted. In *Wade* the pretrial identification was constitutionally impermissible because it had been made in the absence of Wade's counsel in violation of his sixth amendment right to the assistance of counsel, the lineup being considered a critical stage of the prosecution within the contemplation of the sixth amendment.

The Court held there that the violation of the sixth

amendment right to the assistance of counsel did not require an automatic reversal of the conviction or the ordering of a new trial. Rather, it held that the prosecution must be given an opportunity to establish by clear and convincing evidence that the in-court identification was based upon observations of the suspect independent of those made at the lineup. *United States* v. *Wade, supra,* at 240, 87 S.Ct. at 1939, 18 L.Ed.2d at 1164; *Commonwealth* v. *Wilson,* Mass., 276 N.E.2d 283 (1971); *State* v. *Beaulieu, supra; see Murphy* v. *Waterfront Commission,* 378 U. S. 52, 79 n. 18, 84 S.Ct. 1594, 1609 n. 18, 12 L.Ed.2d 678, 695 n. 18 (1964). In short, *Wade* holds that the admission of an in-court identification into evidence does not constitute error per se if the government succeeds in meeting the burden of establishing by clear and convincing evidence that the in-court identification was based upon observations independent of those made at the constitutionally tainted lineup.

We see no sound reason for refusing to apply that same test where the pretrial identification was tainted by an invasion of the fourteenth amendment rights of the defendant to due process. The essence of the rule is that the in-court identification was properly admitted when based upon observations independent of the identification made at the lineup or confrontation. One text writer has said: "If the pretrial identification procedure is unconstitutionl on either Sixth Amendment or due process grounds (or both), the *trial* identification by the same witness likewise may be inadmissible. With respect to the trial identification, however, the exclusionary rule is not a *per se* rule. Here it becomes relevant to determine the effect of the pretrial identification upon the trial identification. In some cases, the trial identification of a witness is admissible even though that witness identified the defendant at an uncon-

stitutional pretrial confrontation." 1 Cipes, *Criminal Defense Techniques* §2.04[2] at 2-12, 2-13 (1971).

In the instant case we are persuaded that the in-court identification was based upon Smith's opportunity to observe both Souza and Camerlin in the package store during the holdup. They were there for at least three minutes, during the course of which he heard their voices, saw their partially masked faces, and, in fact, was pushed aside by Souza as the latter approached the cash register. During the year following the crime Smith participated in some 20 to 30 identification procedures before identifying Souza. At no time during those prior procedures had he identified any of those presented to him as participants in the robbery. It is important to note that there was no substantial discrepancy between the description he had given to the police at the time of the crime and his testimony constituting the in-court identification of Souza. It is our opinion that in the instant case the state has established by clear and convincing evidence that the in-court identification of Souza was based upon the observations of the conduct and appearance of the suspect at the scene of the crime and not on his observations of Souza during the confrontation in the office of the Attorney General.

In our opinion, in so applying the test in the present case, the various factors set out in *Wade* as requiring consideration have been considered and evaluated. Smith had the requisite prior opportunity to observe the criminal act. There was no substantial discrepancy between pre-lineup description and defendant's actual description. Neither were there any identifications made on prior occasions inconsistent with those eventually made. See *United States* v. *Wade, supra,* at 241, 87 S.Ct. at 1940, 18 L.Ed.2d at 1165; 1 Cipes, *supra,* §2.15[4]. It is our conclusion, then, based on clear and convincing evidence that the in-court identification in this case was made on the basis of observa-

tions entirely independent of those made at the confrontation at the office of the Attorney General and was properly admitted. Therefore, we further conclude that any evidence before the jury concerning Smith's constitutionally tainted identification of defendant at the pretrial confrontation constituted harmless error beyond a reasonable doubt. We reach this opinion after a review of all the evidence and in view of Smith's positive in-court identification which rested upon observations other than those made at the pretrial confrontation. *Gilbert* v. *California,* 388 U. S. 263, 274, 87 S.Ct. 1951, 1957, 18 L.Ed.2d 1178, 1187 (1967); *Chapman* v. *California,* 386 U. S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710-11 (1967); *State* v. *Camerlin,* 108 R. I. 524, 531-33, 277 A.2d 291, 294-95 (1971).

The defendant contends further that the admission into evidence of a revolver, State's Exhibit 18, by the trial justice constituted prejudicial error. The record discloses that the gun marked as Exhibit 18 and offered as a full exhibit was a gun supplied by the police, allegedly of the same make and caliber as that used in the slaying. It is conceded that the gun so admitted into evidence was not the weapon used in the commission of the crime.

In our opinion, the admission into evidence in criminal cases of weapons that are not alleged to be the weapon used in the commission of a crime is fraught with the probability of error. Such weapons in evidence can reasonably be expected to confuse and mislead a jury, creating in the jurors' minds the impression that this weapon was used in the commission of the crime. In *State* v. *Gray,* 64 Wash.2d 979, 983, 395 P.2d 490, 492 (1964), the Supreme Court of the state of Washington has indicated that "[c]ourts should approach the admission of models, samples and things offered exclusively for illustrative purposes with wariness and circumspection, to the end that fact be not confused with fancy

and artistic interpretations push aside and take over the role of truth unadorned."

Any evidence which is admitted purely for illustrative purposes must not only be material and relevant but must also be shown "* * * to be substantially like the real thing and substantially similar in operation and function to the object or contrivance in issue." *Id.* at 983, 395 P.2d at 492. However, if error did inhere in the admission of this weapon in this case, we think it was rendered harmless by the fact that the trial justice, at the time of its introduction, specifically instructed the jury that it had no relationship with the crime and that it was being put into evidence only for the purpose of assisting the jury in understanding all of the evidence that was submitted. We cannot say, in view of this specific instruction, that the admission of the gun, if error, was prejudicial to this defendant, and this exception must be overruled. *People* v. *Aguirre,* 158 Cal.App.2d 304, 306-07, 322 P.2d 478, 479 (1958); *State* v. *George,* 8 Utah 2d 172, 174, 330 P.2d 493, 494 (1958); *State* v. *Stacy,* 104 Vt. 379,. 402, 160 A. 257, 267 (1932).

The exceptions of the defendant are overruled, and the case is remitted to the Superior Court.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, for plaintiff.

*David F. Sweeney,* for defendant.