Anthony SOUZA, Petitioner-Appellant,

v.

Francis A. HOWARD, Warden, Adult Correctional Institutions, Respondent-Appellee.

No. 73–1099.

United States Court of Appeals,
First Circuit.

Heard Sept. 7, 1973.

Decided Nov. 27, 1973.

---

Ralph J. Gonnella, Providence, R. I., for appellant.

Donald P. Ryan, Asst. Atty. Gen., with whom Richard J. Israel, Atty. Gen., was on brief, for appellee.

Before COFFIN, Chief Judge, and KILKENNY * and CAMPBELL, Circuit Judges.

KILKENNY, Circuit Judge.

Appellant's claims grow out of his indictment, trial and conviction in the superior court of the state of Rhode Island and his five day incarceration in the Cumberland County jail in that state. He, with another,[1] was convicted of first degree murder in a jury trial. The conviction was affirmed by the supreme court of that state. R.I., 292 A.2d 214 (1972).

The germane facts, as supported by the record and as found by the Supreme Court of Rhode Island, are relatively simple. On the evening of August 4, 1964, two men, with handkerchiefs masking the lower half of their faces, entered a package liquor store in the city of Cranston. Two people were in the store at the time, the owner and his 14 year old part-time assistant, Michael Smith. One of the masked men pointed a gun at the owner and demanded the location of the money. The owner was shot when he responded, "What money?". The gunless robber inspected the cash register and reported that it was empty. The gunman for a second time demanded the whereabouts of the money and when he received no response, twice shot the owner. The robbers, taking a jug of wine, then left the store and Smith called the police. The owner died shortly after admission to a hospital.

About one year later, appellant Souza and his codefendant, Camerlin, were arrested and indicted for the murder of the owner. Shortly after the arrest, appellant was committed to the Men's Reformatory as a deferred sentence violator. On that day, he was taken to the office of the attorney general where Smith identified him as one of the two men who had entered the store on the night of the slaying. This was not a line-up identification. Instead, Smith, by use of a one-way mirror, first looked at appellant in an adjoining room. At that time, Smith said that appellant looked like the gunless robber, the one who pushed him aside going to the cash register. Appellant, said Smith, was not the one who did the shooting. Smith was then taken into the adjoining office where he confronted appellant. Again, he said that appellant looked like the man who had gone to the cash register and pushed him aside on the night of the slaying. Appellant, on request, then held a handkerchief over the lower portion of his face. Viewing appellant in this partial mask, Smith positively identified appellant as the one who did not use the gun. He said that appellant was the man who pushed him aside in going to the cash register, took a jug of wine from the shelf and ran out of the store with the gunman.

Smith had at least three minutes to observe the men involved in the holdup in a room that was well lighted by long fluorescent lights. He was pushed aside by the man who went to the cash register and who passed very close to him on his return. The record is clear that Smith was very alert in observing the appearance of both men. His description to the police immediately after the robbery identified the gunman [Camerlin] as wearing dark trousers, a T-shirt and a dark sweater with a red stripe running through it. Appellant was described as wearing a baggy T-shirt and dark trousers. On the trial, these descriptions were fully corroborated by ap-

---

* Of the Ninth Circuit Court of Appeals, sitting by designation.

1. State v. Camerlin, 108 R.I. 524, 277 A.2d 291 (1971).

pellant's ex-wife who described what her husband and Camerlin had been wearing that evening and by a woman sitting in a car opposite the store who was made suspicious by the manner in which the two men made entry. She made it a point to carefully observe their clothing as they left the store.

During the year following the crime, Smith participated in between 20 to 30 identification procedures on other persons before putting his finger on appellant. At no time during those procedures had he identified any of those presented as participants in the robbery. There is no substantial discrepancy between the description of appellant he gave to police at the time of the crime and the description he gave in the in-court identification of appellant.

While appellant's bill of exceptions was pending in the Rhode Island Supreme Court, he presented to that court a writ of habeas corpus. In the writ he alleged a violation of due process based on a suggestive identification procedure. He later asserted, in his brief, that it was constitutional error for the trial judge to admit the in-court identification without a prior evidentiary hearing. The supreme court treated the writ as a motion to enlarge the record and ordered a hearing before the superior court. A transcript of that hearing, now before us, was made a part of the record before the supreme court in connection with petitioner's still pending bill of exceptions. The Rhode Island Supreme Court held the out-of-court identification proceeding was unnecessarily suggestive and violative of due process. However, the in-court identification was sustained on the ground that there was clear and convincing evidence it was based on observations entirely independent of the alleged tainted show-up. The admission in evidence of the out-of-court identification was held to be harmless beyond a reasonable doubt.

## ISSUES

I(a). Was the out-of-court identification constitutionally impermissible, and, if so, I(b) did the out-of-court identification so taint the in-court identification so as to make the latter inadmissible?

II. Should the district court have held an evidentiary hearing?

## IDENTIFICATION

I(a). We commence our analysis with the statement that the facts in this case bear little, if any, resemblance to those in Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969), appellant's principal case. There, the Supreme Court held that the suggestive elements in the identification procedure made it all but inevitable that the witness would identify the accused whether or not he was, in fact, "the man" and held that the procedure so undermined the reliability of the identification as to violate due process. Foster, about six feet in height, was placed in the line-up with two other men, both six or seven inches shorter in height. The accused wore a leather jacket similar to one the witness said he observed under the overalls worn by the robber. When the witness could not identify the accused, the former was brought into a room and seated across the table from the witness in a one to one confrontation. The witness was still uncertain as to whether the accused was one of the robbers. Some seven to ten days later, the accused was again placed in a line-up of five men with neither of the shorter men in the previous line-up included. It was not until this time that the witness made the positive identification.

The question of whether suggestiveness alone requires the exclusion of identification evidence was not decided by the Supreme Court until presented in Neil v. Biggers, 409 U.S. 188, 198–199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), some time subsequent to the decision of the Rhode Island Supreme Court in the case before us. After reviewing its previous identification decisions of Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Simmons v. Unit-

ed. States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), and its then most recent case, Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L. Ed.2d 387 (1970), it noted that Foster v. California, *supra,* was the only case to that date in which the Court found the identification procedures to be constitutionally impermissible. The Court in *Biggers* went on to hold that the admissibility of this type of evidence must be viewed in the light of the totality of circumstances and, if in such circumstances, the identification is reliable, then the evidence is admissible even though the confrontation procedure is suggestive. The factors to be considered in evaluating the likelihood of misidentification:

"... [I]nclude the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." (409 U.S. 199, 93 S.Ct.).

■ Applying the *Biggers* formula to the record before us, we find ourselves in disagreement with the conclusion reached by the Rhode Island Supreme Court. We are of the view that the out-of-court identification in the Rhode Island Attorney General's Office was not in violation of applicable constitutional standards. When observed, with others in similar clothing, through the one-way glass, Smith said the appellant looked like the man who had pushed him. Smith then met appellant face to face and again said that he looked like the gunless intruder who passed him in the liquor store. Immediately following, Smith looked at appellant with a handkerchief over the bridge of his nose and

the lower portion of his face, and then positively identified him.[2] This, with the precise description given by Smith to the police of the clothing worn by the robbers, particularly the clothing worn by appellant, together with his physical characteristics, was sufficient to make the pre-trial confrontation constitutionally permissible. We are confident that if the Supreme Court of Rhode Island had been aware of the *Biggers* guidelines, it would have arrived at the same conclusion.

■ I(b). Although, in our opinion, the out-of-court identification is not constitutionally violative of appellant's rights, we need not rest our decision on that ground. Smith's in-court identification is clear and positive and that identification is supported by substantial evidence that appellant was, in fact, the unarmed robber. Our independent search of the record forces us to agree with the finding of the Rhode Island Supreme Court that the in-court identification in this case was made on the basis of observations entirely independent of those made at the confrontation in the office of the attorney general and that any evidence before the jury concerning the out-of-court identification constituted harmless error beyond a reasonable doubt under the principles enunciated in Gilbert v. California, 388 U.S. 263, 274, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and their progeny.

The detail of Smith's in-court identification is remarkable. His direct and cross-examination cover 127 pages of the transcript. Most of the direct and cross-examination was devoted to Smith's identification of appellant and his co-defendant. Despite the vigor and thoroughness of the cross-examination, Smith remained steadfast in the positive-

---

2. "... When I saw this I was sure that this was one of the men that held up and killed Mr. MacDougal. This man was not the man that had the gun . . ., but the man who pushed me and then looked in the cash register. . . . There is

no question in my mind that this man I saw today at the Attorney General's Office is the same man that pushed me during the holdup. . . ." [Excerpt Smith Statement to Police, July 28, 1965].

ness of his identifications. Here, as in *Biggers,* the lapse of time between the murder and the confrontation is a negative factor. Be that as it may, Smith's description of appellant as to approximate height, weight, complexion, color of hair, build and clothing was more than ordinarily thorough. The testimony is undisputed that he made no previous identification at any of the numerous show-ups, line-ups or other showings. His record, as in *Biggers,* was thus a good one as he had previously resisted whatever suggestiveness which might have been inherent in a show-up. Under the totality of all of the evidence, we find no substantial chance of erroneous identification.

Entirely independent of the identification problem is the evidence of appellant's ex-wife who positively linked him to the commission of the crime. She testified that Camerlin met her husband on the night in question and that appellant and Camerlin left her home together. Her description of the clothing worn by appellant and his companion corresponds to the description given by Smith. She testified that appellant called her later that evening and said, "We didn't make out too good." Later he requested her to read an article in the paper which concerned the death of the storeowner. After reading the article the appellant's wife asked, "What about it?". Appellant responded, "That was Louis and I that did it." Appellant told her that they were looking for a place to "Break-in" and that they "Came across this liquor store and went in with handkerchiefs across their mouths." He told her that his companion held the gun on the owner and asked where the money was. When the owner laughed, his companion shot him. He again asked for the money, then twice shot the owner. He told her that on the way out they picked up a gallon of wine, that he pushed Smith aside and then stole an automobile which they abandoned at the Cranston Street Armory. Additionally, she testified that appellant was worried about the handkerchief he had dropped

and was about to turn himself over to the police. She further testified that she was with her husband when he threw a newspaper wrapped package in the water near the Washington Bridge and told her that it contained the gun which was used. He later pointed out the liquor store as the one where the murder had occurred. Appellant's ex-wife's testimony is corroborated by Smith's description of the robbers and the clothing worn by them. It is undisputed that the unarmed robber took a jug of wine and that an automobile was stolen and later found at the Cranston Street Armory. The description of the robber's clothing by Mr. and Mrs. Fontaine, who observed them from across the street, is essentially the same as the description of the clothing given by Smith and appellant's ex-wife. Consequently, aside from the in- and out-of-court identifications by Smith, the record clearly demonstrates guilt. Where, as here, there is independent evidence of guilt beyond a reasonable doubt, the error, if any, in the admission of the identification evidence is harmless. United States v. Counts, 471 F.2d 422, 425–426 (CA2 1973).

Appellant's argument that the harmless error rule does not apply in a "Stovall type situation" is answered in *Stovall* itself, where the Court, in speaking of the impracticability of making retroactive the *Wade* and *Gilbert* rules, said: ". . . At the very least, the processing of criminal calendars would be disrupted while hearings were conducted to determine taint, if any, in identification evidence, *and whether in any event the admission of the evidence was harmless error.*" 388 U.S. 293, 300, 87 S.Ct. 1967, 1971, 18 L.Ed.2d 1199. [Emphasis supplied.] Gilbert v. California, 388 U.S. 263, 272, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), recognizes the same rule.

## EVIDENTIARY HEARING

Although the contention in the main is foreclosed by our conclusions on the previous issues, we now address ourselves to appellant's claim that he was

entitled to an evidentiary hearing in the district court on whether the in-court identification was tainted by the pre-trial show-up. He argues that Gilbert v. California, *supra,* and subsequent Supreme Court cases require such a hearing.

■■ At the outset, we must recognize the limits of Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), and 28 U.S.C. § 2254(d), as measured by us in Leavitt v. Howard, 462 F.2d 992, 995 (CA1 1972), where, in pertinent part, we said:

> ". . . [T]he federal court is bound by the state court's finding of historical facts unless the petitioner offers convincing evidence that they are erroneous." (Page 995).

and continuing, we said:

> "Even if the state court's legal theory were incorrect, . . . its findings of fact are nevertheless presumed correct unless its legal error either distorted the focus of its hearing, or made it impossible to infer the factual findings on which the court based its legal conclusions." *Id.* p. 996.

In *Leavitt,* we recognized that a careless interpretation of the principles involved in *Townsend* would upset ". . . [T]he careful adjustment of the sensitive state and federal interests made by the Supreme Court in that and other cases, . . . ." *Id.* p. 995. *Leavitt* makes it clear that it is the duty of the federal courts to neither deny the petitioner an evidentiary hearing when such is required under *Townsend* and 28 U.S.C. § 2254(d), nor to abort the power of the state courts as triers of the fact when an evidentiary hearing is unnecessary.

Appellant says that the state should have produced Smith at the state court hearing on the enlargement of the record. The only evidence produced was connected with appellant's demand for counsel at the time of the show-up and a few hazy details on the identification procedure. Although appellant raised the taint issue in his habeas petition, he offered no evidence that the confrontation was sufficiently suggestive to taint the in-court identification. For that matter, his attorney resisted practically all attempts of the attorney general to develop from appellant what actually occurred in the attorney general's office. Consequently, the Rhode Island Supreme Court was compelled to rely on the transcript of the trial in order to assess whether there were sources of identification independent of the suggestive pre-trial show-up.

We agree with the district court that a three-way inquiry is sufficient to resolve the issue: (1) did appellant have an opportunity in the state court to present evidence on the issue; (2) was the record adequate for determination of the issue; and (3) is a state appellate court which makes its findings on the record before it, a state court trier of fact within the meaning of *Townsend* or a state court of competent jurisdiction on a factual issue within the meaning of 28 U.S.C. § 2254(d).

Since the state court trial was conducted prior to the decision in Stovall v. Denno, *supra,* we recognize that incentive might have been lacking for the appellant to make a record at the trial undermining the identification. Consequently, if appellant never had an opportunity to supplement the trial transcript on this issue, it would be a factor in favor of a hearing. Here, however, it is clear that appellant had an opportunity to present this type of evidence at the supplementary hearing. In his petition for a writ of habeas corpus, he alleged:

> ". . . The testimony of the said Smith, resting upon this illegal 'show-up' so tainted my trial and conviction as to render it illegal and void."

Beyond that, his personal plea for a hearing on the petition included the language:

> ". . . I request this Court to hold a hearing at which time 1 be (sic) permitted to testify as to the facts and circumstances [surrounding

the illegal detention and interrogation at the Attorney General's Office and the purported identification by said Smith] and *present such other evidence through witnesses and documents as will substantiate the facts above alleged* and to be made (sic) a part of the record of this court." (Emphasis supplied.)

From this it is clear that appellant could have challenged the reliability of the Smith in-court identification at the time of the state court's supplemental hearing in precisely the same manner as he later attacked the identification in his state court appellate brief. The transcript on the supplemental hearing ordered by the Rhode Island Supreme Court consists of 85 typewritten pages. Approximately 10 pages of that transcript consist of a cross-examination of appellant on what he recalled of Smith's show-up identification. That appellant had an opportunity to prove his habeas corpus claim of an illegal show-up and that such a show-up tainted his trial and conviction is beyond question.

This is not a case such as Cooper v. Picard, 428 F.2d 1351 (CA1 1970), where the absence of detail as to the pre-trial confrontation necessitated an evidentiary hearing. Here, any possible gaps in the trial record as to details of the pre-trial identification were remedied by the opportunity to present evidence on his claim at the supplementary hearings. Additionally, in the state court trial Smith was subjected to extensive cross-examinations by appellant's counsel and counsel for his co-defendant. We are convinced that the record before the state supreme court, and now before us, fully supports that court's finding that the in-court identification was clearly independent of the alleged taint of the pre-trial procedure and that the state court properly utilized the guidelines of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1969), in arriving at its findings and decision.

Finally, we must dispose of appellant's contention that a state appellate court is not a state court trier of fact within the meaning of *Townsend* or a state court of competent jurisdiction on a factual issue within the meaning of 28 U.S.C. § 2254(d).

He argues that the Rhode Island Supreme Court was not authorized to decide on the cold record that the in-court identification was not tainted with the pre-trial show-up. He says that only a trial court can make such a determination. Appellant's position on this issue cannot be reconciled with the action taken by the Supreme Court in Neil v. Biggers, *supra*, where it held that although a pre-trial identification might have been suggestive, nevertheless, under the totality of circumstances, the witness' in-court identification was reliable. There, in passing on the cold record, the author of the majority opinion said:

". . . Weighing all of the factors, we find no substantial likelihood of misidentification. The evidence was properly allowed to go to the jury." [409 U.S. page 201, 93 S.Ct. page 383.]

 Only two jurisdictions have passed directly on the subject and they have decided adversely to appellant's contention. They held that a reviewing court has authority to decide on the record the independent sources of in-court identification. United States ex rel. Harris v. State. of Illinois, 457 F. 2d 191 (CA7 1972); United States v. York, 138 U.S.App.D.C. 197, 426 F.2d 1191, 1193 (1969); Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230, 1248 (1968). In those cases, the courts of appeals concluded that there is no sound reason why a state appellate court, when the record is adequate, should not make findings on the issue. Be that as it may, we need not here decide whether in all instances, the findings of a state appellate court must be recognized as falling within the perimeter of *Townsend* and the requirements of 28 U.S.C. § 2254(d). Here, the appellant deliberately invited the Rhode Island Supreme Court to try the issues

presented by his habeas petition. One of the issues was the alleged taint of the in-court identification. A hearing was held on the petition in which appellant appeared and testified. He now finds himself in the awkward position of trying to challenge the findings which are grounded on his affirmative action. In these circumstances, we hold that the Rhode Island Supreme Court had jurisdiction to pass on the issue and that we are bound to respect its finding that the in-court identification was not tainted by what occurred at the show-up in the attorney general's office. Consequently, we conclude that the district court was under no obligation to hold an evidentiary hearing on the issue presented to and decided by the state supreme court.

## CONCLUSIONS

It is our conclusion that the evidence with reference to the pre-trial and in-court identifications was admissible in the trial. Beyond that, we hold that the in-court identification was not tainted with pre-trial identification and that even though such a taint existed, independent evidence of appellant's guilt is so clear that the admission of the tainted evidence was harmless beyond a reasonable doubt.

The judgment of the district court dismissing appellant's habeas corpus petition without a hearing is affirmed.

COFFIN, Chief Judge (concurring).

While I concur in the decision to affirm, I think it unnecessary at this time for this court to attempt to give content to the *Biggers* "totality of circumstances" standard for judging the reliability of arguably suggestive out-of-court identifications, when our decision today may rest as easily upon the strength of the in-court identification and harmless error. The *Biggers* formula, as applied by other circuits, is presently wide open, embracing an as yet limitless range of suggestive identifications. *See, e. g.,* United States v.

Evans, 484 F.2d 1178 (2d Cir. 1973); Rudd v. Florida, 477 F.2d 805, 807 (5th Cir. 1973). Application here does not add any sense of limits or weights to *Biggers'* compendious phrase.