**STATE**

v.

**Christopher SMITH.**

**No. 2010–367–C.A.**

Supreme Court of Rhode Island.

March 27, 2012.

Jane M. McSoley, Department of Attorney General, for State.

Janice M. Weisfeld, Office of the Public Defender, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on February 9, 2012, on appeal from a judgment of conviction after a jury verdict finding the defendant, Christopher Smith (defendant or Smith), guilty of numerous acts of child molestation. On April 6, 2010, Smith was found guilty of three counts of first-degree child molestation sexual assault and two counts of second-degree child molestation sexual assault arising from a series of assaults upon a thirteen-year-old girl, whom we shall refer to as Rachel.[1] On April 23, 2010, the trial

---

1. We refer to the victim in this case and her family members by pseudonyms to protect

justice heard and denied the defendant's motion for a new trial. Thereafter, the defendant was sentenced to concurrent terms of fifty years at the Adult Correctional Institutions, with twenty-five years to serve and twenty-five years suspended, with probation, on the three counts of first-degree child molestation, and thirty years, with twenty-five years to serve and five years suspended, with probation, for the two counts of second-degree child molestation. Before this Court, the defendant asserts that the trial justice erred by: (1) denying the defendant's motion for a new trial; and (2) permitting the state, over the defendant's objection, to cross-examine Smith about weapons training he received while in the military. Because we are of the opinion that the defendant's arguments are without merit, we affirm the judgment of the Superior Court.

### Facts and Travel

We glean the factual history from the evidence in the record, including the trial testimony of Rachel and Smith. It was early in 2006 when Smith entered the life of twelve-year-old Rachel, during a brief period when her mother's colorectal cancer was in remission. The defendant was introduced to Rachel's mother, whom we shall refer to as Samantha, and a romantic relationship developed between them. In March or April 2006, Smith moved into the second-floor Pawtucket apartment that Samantha shared with her two children: Rachel, and Rachel's younger brother, whom we shall refer to as John. According to

Smith, Samantha exhibited a somewhat passive disposition toward raising Rachel and John; and, although Rachel's maternal grandparents lived in the first-floor apartment, defendant assumed an active role in parenting them. Smith, who at the time was a Private First Class in the Army National Guard, drove the children to school, participated in activities with them, and acted as the family disciplinarian—ensuring that their rooms were clean and that they were well-behaved. Although Smith testified that he treated Rachel "like a daughter," Rachel made no secret of her dislike of Smith, whom she considered overly strict.[2]

Rachel's relationship with Smith irrevocably was altered in August 2006 when Samantha's health improved sufficiently for her to return to work as a certified nursing assistant. Samantha always worked the third shift, from 10 p.m. to 6 a.m. or from 11 p.m. to 7 a.m., leaving Smith at home, entrusted with the care of her children. Rachel testified that it was on one of these nights, when her mother was at work, that she awakened to discover Smith in her bedroom.[3] Rachel, who then was thirteen years old, was roused from her sleep by the feeling of someone touching her breast underneath her shirt and over her bra. Rachel testified that although she was "groggy," she knew that it was Smith because he was the only male—other than young John—present in the house, and because the man's size was more commensurate with the size of defen-

---

their privacy.

**2.** According to testimony adduced at trial, Smith—with Samantha's consent—made Rachel exchange her more spacious bedroom for her brother's smaller one as punishment for not keeping her room neat. Rachel testified that defendant would sometimes "ground" her for arriving home ten minutes after her curfew.

**3.** Rachel and Smith both testified that Rachel's bedroom adjoined her brother's bedroom, and that although there was a wall between the rooms, the door between the bedrooms had been removed so that the two siblings could converse freely when they were in bed. John did not testify at trial.

dant, who was over six feet tall and weighed 190 pounds, than with John. Rachel would be awakened during the night and assaulted by Smith on more than one occasion.

Rachel testified that she was assaulted a second time, again while her mother was working, when Smith entered her bedroom and climbed on top of her. Rachel described how Smith inserted his finger into her vagina and then penetrated her vagina with his penis. Although Rachel resisted and told defendant to get off of her, he refused. Rachel testified that on that occasion she was certain that the man assaulting her was Smith because he looked directly at her and threatened to kill her if she disclosed the abuse. The third assault occurred when Smith entered Rachel's bedroom and vaginally penetrated her with his penis, this time without speaking to her. Rachel testified that defendant vaginally penetrated her on three or four more occasions in August and September 2006, all while Samantha was at work.

Rachel testified that the molestation came to an end in September 2006 when Samantha suffered a fall at work, leading her to seek medical treatment and to learn that her cancer had returned. Consequently, Samantha stopped working and the children no longer were alone with defendant. As Samantha increasingly became ill, her relationship with Smith deteriorated until he moved out of the home around Thanksgiving. Time passed and Rachel did not disclose the abuse to any adult.[4] She testified that she did not re-port what happened because Smith had threatened to kill her and she was afraid.

In February 2007, Rachel began participating in "Life Choices," an after-school program sponsored by the Big Sisters of Rhode Island. The program, moderated by Roxanne Trenteseaux (Trenteseaux), was designed to assist young women in dealing with topics such as puberty, self-esteem, and relationships. At trial, Trenteseaux testified that she broached the subject of confidentiality at a Life Choices meeting in late February by informing the girls that anything they said would be kept in confidence unless it involved "someone * * * hurting them or if they're hurting somebody else." Trenteseaux testified that Rachel vigorously questioned her about the confidentiality policy, and then began to cry. When Trenteseaux inquired about what was wrong, Rachel disclosed to her that she had been sexually molested by her mother's former boyfriend. Rachel told Trenteseaux that she felt that she could not reveal the abuse to her mother because of her mother's illness.[5]

In accordance with applicable policy, Trenteseaux first satisfied herself that the perpetrator no longer was in the home, and she then proceeded to report the molestation to the Department of Children, Youth and Families (DCYF). DCYF personnel subsequently spoke with Rachel and Smith, and Rachel was examined by Dr. Christine Barron (Dr. Barron), a child abuse pediatrician at Hasbro Children's Hospital.[6]

On September 19, 2007, defendant was arraigned on a grand jury indictment

---

**4.** Rachel testified, without further elaboration, that she did tell some friends about the molestation.

**5.** Sadly, in October 2007, Samantha passed away, leaving Rachel and John to live with their maternal grandparents.

**6.** Doctor Barron testified at trial that Rachel's examination was normal and not indicative of molestation, but she deemed the results inconclusive because it was typical for penetration to leave no permanent damage or scarring in a teenage girl who was fully estrogenized.

charging him with five counts of child molestation; on March 30, 2010, a jury trial commenced in Superior Court. The defendant testified at trial and denied engaging in any sexual contact with Rachel or inappropriately touching her. When asked if he ever went into Rachel's room to have sex with her, defendant replied, "That's a negative." When asked if he ever entered Rachel's room to touch her, Smith again replied, "Negative." The defendant also declared that although he had a closer relationship with John than with Rachel, his relationship with Rachel was not a contentious one.[7]

On April 6, 2010, the jury returned a verdict of guilty on all counts, and defendant filed a motion for a new trial in accordance with Rule 33 of the Superior Court Rules of Criminal Procedure. The trial justice denied the new-trial motion and sentenced defendant to a lengthy term of incarceration. The defendant assigns as error the decision of the trial justice denying his motion for a new trial, arguing that the weight of the evidence did not support the verdict. The defendant also assigns error to the trial justice's decision to permit the state to cross-examine Smith about any weapons training he received as a member of the National Guard-testimony that defendant avers was highly prejudicial.

### Standard of Review

■ "When a trial justice considers whether the verdict is against the weight of the evidence, he or she sits as the legendary thirteenth juror; and, in light of the charge to the jury, must exercise his or her independent judgment in weighing the evidence and assessing the credibility of the witnesses." *State v. Clark*, 974 A.2d 558, 569 (R.I.2009) (citing *State v. Perkins*, 460 A.2d 1245, 1247 (R.I.1983)). Specifically, "[t]he trial justice must (1) consider the evidence in light of the jury charge, (2) independently assess the credibility of the witnesses and the weight of the evidence, and then (3) determine whether he or she would have reached a result different from that reached by the jury." *State v. Vargas*, 21 A.3d 347, 354 (R.I.2011) (quoting *State v. Prout*, 996 A.2d 641, 645 (R.I. 2010)). "If, after conducting such a review, the trial justice reaches the same conclusion as the jury, the verdict should be affirmed and the motion for a new trial denied." *State v. Heredia*, 10 A.3d 443, 446 (R.I.2010) (citing *State v. Snow*, 670 A.2d 239, 244 (R.I.1996)). "If the trial justice has complied with this procedure and articulated adequate reasons for denying the motion, his or her decision will be given great weight and left undisturbed unless the trial justice overlooked or misconceived material evidence or otherwise was clearly wrong." *State v. Horton*, 871 A.2d 959, 967 (R.I.2005) (quoting *State v. Gomez*, 848 A.2d 221, 234 (R.I.2004)).

■ In passing on a trial justice's decision to allow into evidence certain witness testimony, we are mindful that the "admissibility of evidence is a question addressed to the sound discretion of the trial justice and will not be disturbed on appeal absent a clear abuse of that discretion." *Ims v. Town of Portsmouth*, 32 A.3d 914, 926 (R.I.2011) (quoting *State v. Mann*, 889 A.2d 164, 166 (R.I.2005)). Rule 403 of the Rhode Island Rules of Evidence provides

---

**7.** At the close of the state's case, and again at the close of the evidence, defendant moved for a judgment of acquittal in accordance with Rule 29 of the Superior Court Rules of Criminal Procedure. The defendant argued that there was insufficient evidence to convict because the complainant lacked credibility and gave uncorroborated and inconsistent testimony. The trial justice denied defendant's Rule 29 motion, and defendant has not appealed from that ruling.

that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury * * *." "The application of Rule 403 is committed to the sound discretion of the trial justice." *State v. Rios*, 996 A.2d 635, 640 (R.I.2010) (citing *State v. Gaspar*, 982 A.2d 140, 148 (R.I.2009)).

## Analysis

### I

### Motion for a New Trial

■ The defendant contends that a new trial should have been granted because Rachel was not a credible witness, and consequently, there was insufficient evidence to support the jury's verdict. Our review of the record discloses that, in ruling on defendant's new-trial motion, the trial justice thoroughly recounted the trial evidence and assessed the witnesses' credibility. The trial justice acknowledged that there were "some inconsistencies" in Rachel's testimony, particularly some discrepancies between her testimony at trial and the testimony she gave before the grand jury. However, the trial justice found that those inconsistencies were immaterial because they pertained to tangential events, like how many weeks her mother worked in August and September 2006—matters that a child of Rachel's age may not recall. The trial justice additionally noted that defendant's attorney had ample opportunity to cross-examine Rachel and did so vigorously; and, although counsel probed those inconsistencies, the jury nonetheless chose to believe Rachel.

After recounting the testimony adduced at trial, the trial justice determined that Rachel "certainly did testify with enough specificity to convince this jury and this Court that this defendant was the perpetrator of these very heinous crimes against her." The trial justice remarked that it was not unusual for children of tender years to delay disclosing abuse, especially given Rachel's convincing testimony that defendant had threatened her. Conversely, the trial justice found that defendant "certainly had an interest in the outcome of this case" and "did not appear to be truthful or credible to me." The trial justice concluded that he "didn't believe [defendant's] testimony" and "discounted [defendant's] testimony practically in total * * *."

The trial justice then reviewed the instructions given to the jury, determined that they were the instructions ordinarily given in child molestation trials, and noted that the jurors appeared alert and attentive throughout the trial. The trial justice concluded that the verdict "was grounded on very credible evidence provided by the complaining witness and corroborated to a reasonable degree by the other witnesses provided [by] the State. The Court agrees with the jury verdict * * *."

We are of the opinion that the trial justice performed an exhaustive review of the testimony presented at trial and thoughtfully evaluated the evidence and the credibility of the witnesses in light of his charge to the jury. The trial justice found the complainant to be a credible witness, and conversely, he rejected defendant's testimony as not worthy of belief. It is apparent from the comments of the trial justice and the record before us that defendant's testimony—laden with cryptic one-word responses—did not assist his cause. "[W]hen a defendant elects to testify, he runs the very real risk that if disbelieved, the trier of fact may conclude that the opposite of his testimony is the truth." *State v. Mattatall*, 603 A.2d 1098, 1109 (R.I.1992). The trial justice's findings and conclusions in denying the new-trial motion were well within his discre-

tion, and we see no reason to disturb his decision.

## II

## Weapons Training Question

The defendant's second assertion of error is that it was improper for the trial justice to permit the state, on cross-examination, to ask Smith whether he had received any weapons training in the military. The record discloses that defendant had testified on direct examination that he was a member of the National Guard. On cross-examination, the state asked, "Were you trained with any weapons?" to which defendant replied, "M–16." Defense counsel objected on relevancy grounds, and the trial justice overruled the objection.

On appeal, defendant avers that the trial justice's decision to allow defendant's answer to stand constituted prejudicial error and violated Rule 403 because, he contends, the inquiry was not only irrelevant, it was highly prejudicial. This Court has held "that a trial justice's discretion to exclude evidence under Rule 403 must be used sparingly. * * * It is only when evidence is marginally relevant and enormously prejudicial that a trial justice must exclude it." *State v. DeJesus*, 947 A.2d 873, 883 (R.I.2008).

■ Rule 401 of the Rhode Island Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." When overruling defendant's objection, the trial justice noted that the state's question about weapons training was relevant background information about defendant—who already had testified about his career in the National Guard. Furthermore, when Rachel testified that Smith had threatened to kill her if she disclosed the molestation, defense counsel—in an effort to discredit her assertion that she was in fear of Smith—pressed Rachel on the fact that she had never seen Smith with a firearm in the home. The state's inquiry about Smith's training in firearms was appropriate rebuttal evidence tending to show that Rachel's fear of Smith was reasonable. We are satisfied that defense counsel's cross-examination of Rachel opened the door to this question, which clearly was relevant to the issues at trial.

■ Before this Court, defendant seeks to demonstrate the prejudicial nature of the state's single question by comparing it to the evidence presented in several other cases in which the state introduced evidence pertaining to a defendant's use or possession of firearms in situations unrelated to the crime on trial. The defendant's reliance on these cases is misplaced. The defendant points to *State v. Souza*, 110 R.I. 261, 269, 292 A.2d 214, 219 (1972), in which the Court ruled that the "admission into evidence in criminal cases of weapons that are not alleged to be the weapon used in the commission of a crime is fraught with the probability of error." In that case, the state entered into evidence a firearm that was similar to the one used in the commission of the crime with which the defendant was charged. *See id.* The Court in *Souza* expressed concern that admitting a firearm that was intended to serve as a model of the weapon used in the crime could leave the jury with the mistaken impression that the firearm in evidence had actually been used in the crime. *See id.* Conversely, in this case, no weaponry was introduced into evidence, and there was no likelihood of such confusion.

The defendant also cites *State v. Sfameni*, 115 R.I. 18, 21–22, 24, 339 A.2d 742, 744, 746 (1975), for the proposition that a

new trial is warranted when prejudicial information is placed before the jury. In *Sfameni,* this Court vacated the defendant's assault conviction because the jury had been allowed to hear irrelevant and prejudicial evidence about the defendant's illicit drug use. *See id.* at 21–22, 339 A.2d at 744. In contrast, at Smith's trial, the sole question at issue merely asked defendant whether he had received weapons training as a member of the National Guard—a form of training that most people would consider standard for members of the military. The state's question was relevant and carried no implication that Smith had engaged in illegal or improper conduct with a weapon, and was not of a type that would inflame the passions of the jury. *See State v. Rushlow,* 32 A.3d 892, 897 (R.I.2011) ("A statement is held to be sufficiently prejudicial when it is 'extraneous to the issues before the jury and tend[s] to inflame the passions of the jury.'" (quoting *State v. Rosario,* 14 A.3d 206, 215 (R.I.2011))).[8]

The defendant has failed to demonstrate that the inquiry into whether he received weapons training as a member of the National Guard was so prejudicial as to warrant a new trial. We are of the opinion that the trial justice properly exercised his discretion under Rule 403 in weighing the probative value of the evidence against any potential prejudicial effect in overruling the defendant's objection. We reject the defendant's assertions of error.

### Conclusion

Accordingly, we are of the opinion that the defendant's appellate contentions lack merit, and therefore, we affirm the judg-

ment of the Superior Court. The papers in this case may be remanded to the Superior Court.

---

**8.** The state's one question posed to Smith also contrasts with the prosecution in *State v. Brash,* 512 A.2d 1375, 1382, 1383 (R.I.1986), in which the Court vacated the defendants' convictions for conspiracy to commit murder because the state had been permitted "to spend an inordinate amount of time and energy admitting and explaining a wide variety of firearms that bore no relation to the charged offense." *State v. Rios,* 996 A.2d 635, 640 (R.I.2010) (discussing the Court's holding in *Brash*).