Barry K. **LEAVITT**, Petitioner-Appellee,

v.

Francis **HOWARD**, Warden, Adult Correctional Institution, Respondent-Appellant.

No. 72–1016.

United States Court of Appeals, First Circuit.

Heard April 4, 1972.

Decided May 24, 1972.

Donald P. Ryan, Asst. Atty. Gen., with whom Richard J. Israel, Atty. Gen., was on brief, for appellant.

Ira L. Schreiber, Providence, R. I., for appellee.

Before ALDRICH, Chief Judge, Mc-ENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

Barry K. Leavitt, 20 years old, married, was living in March 1964 on the second floor of an apartment house in Providence, Rhode Island. On the morning of March 23, 12-year old Michael Pono, who lived on the first floor, came home from school because he had forgotten his lunch money, and was stabbed to death. Shortly thereafter, Leavitt called the police from a telephone in his mother-in-law's nearby house and reported that, attracted by screams, he had come down the stairs in the apartment house and that an assailant had cut him and escaped. After taking him to a hospital for treatment, the police invited Leavitt to the station to give assistance, but after a short questioning concluded, and told him, that he was a suspect. In the meantime, they had towed his wife's car, which he had driven to his mother-in-law's, to police headquarters. They asked for and received the keys to the car, and thereafter found in the trunk a knife, ultimately introduced as the weapon and used, effectively,[1] to convict Leavitt of the murder. The present habeas petition asserts, basically, that the car was illegally searched. The district court so found, 332 F.Supp. 845, and the state appeals.

---

1. A "washer," missing from the knife, was found under the body of the victim.

The case presents an important question of habeas corpus procedure, and we must review the proceedings in some detail. Prior to his conviction Leavitt was given one full, and one partial opportunity to avoid being connected with the knife. The first was a voir dire examination held at his request when, during the course of the trial, the prosecution asked a police detective whether during interrogation Leavitt had admitted its ownership. Following two and a half days of testimony, the trial judge allowed this line of questioning, finding that Leavitt had been warned of his constitutional rights prior to being asked the series of questions during which he allegedly consented to the search and culminating in his admission that the knife was his, and finding that his rights were protected during this interrogation. When the knife was subsequently offered in evidence it was admitted *over objection without further hearing.* The court, however, did instruct the jury that unless it found that petitioner had been warned of his rights before being interrogated, they were to disregard any alleged admissions concerning its ownership.

Leavitt was convicted, and the conviction was upheld on appeal. State v. Leavitt, 1968, 103 R.I. 273, 237 A.2d 309. The Court recognized that the burden had been on the state to prove the defendant's consent to the search "by clear and convincing evidence," but held that the evidence adduced at the voir dire was sufficient to warrant the finding that Leavitt had voluntarily consented to the search and, therefore, that the decision to admit the knife and questions concerning it was not error. Certiorari was denied. Leavitt v. Rhode Island, 1968, 393 U.S. 881, 89 S.Ct. 185, 21 L.Ed.2d 155.

Leavitt next filed a habeas petition in the district court, but was told that he had not exhausted his state remedies be-

cause he had not alleged in state court the facts now advanced to contradict the police testimony at his trial that he had been warned of his rights. He responded by filing a petition in the superior court reciting that his confession to the police had not been voluntary—a matter of no consequence, as it had never been used—and that his consent to the search of the car was not voluntary. He asserted that although he had requested counsel, and lawyers retained by his wife were at the station for hours demanding to see him, they were not permitted to do so.[2] After an evidentiary hearing, the measure of which does not appear, the superior court denied the petition. Leavitt then filed a second district court petition. Again the court concluded that he had not exhausted his state court remedies. This was not because he had not appealed from the superior court findings. Under Rhode Island practice the superior court and the Supreme Court have concurrent jurisdiction of habeas petitions, and an appeal does not lie to the latter from the former. R.I.Gen.L. § 8–2–16 (1956); R.I. Gen.L. § 10–9–22 (1956); see Higgins v. Tax Assessors, 1905, 27 R.I. 401, 410, 63 A. 34, 38. It seems an act of supererogation to require a defendant to file in both courts. See Humphrey v. Cady, 405 U.S., & n. 18, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972). Perhaps for this reason the Rhode Island Supreme Court denied the petition on the papers without a hearing. Leavitt v. Howard, R.I., 1971, 274 A.2d 905. The district court then proceeded to entertain Leavitt's petition. It took testimony, and in an opinion containing extensive discussion concluded that Leavitt had not consented to the search of the car.

■ Preliminarily, the court concluded that the fact that, before asking for the keys, the police had towed the car to the police station without a warrant, and without consent, although they had not

---

2. The alleged exclusion of counsel preceded the confession, but did not, even on petitioner's testimony, occur until two hours

after the car episode. The testimony is unclear as to whether he claims to have requested counsel prior to the search.

opened it, "taints the evidence of the knife found in the trunk." 332 F.Supp. at 850. We cannot agree. If, when they searched the trunk, they had petitioner's permission, it is irrelevant whether prior thereto the car was in the station or on the street. *See* Phelper v. Decker, 5 Cir., 1968, 401 F.2d 232, 236. The significant question is whether petitioner consented to the entry.

■ The district court's finding that petitioner did not consent to the search raises grave problems. Although the question had previously been decided by the Rhode Island state courts following evidentiary proceedings, the district court decided to hold its own. Its jurisdiction to hold such a hearing, within its discretionary powers, is, of course, plenary. Townsend v. Sain, 1963, 372 U.S. 293, 311–312, 83 S.Ct. 745, 9 L.Ed.2d 770; Fisher v. Scafati, 1 Cir., 1971, 439 F.2d 307, 309, vacated on other grounds, 403 U.S. 939, 91 S.Ct. 2256, 29 L.Ed.2d 719. On the basis of this hearing the court, allegedly because it found that the state court's finding of consent was not fairly supported by the record, made its own independent findings of fact. In the course of so doing it expressed the view that the state had the burden of proving consent by clear and convincing evidence. It is impossible to determine to what extent it relied, in making these findings, upon that ruling, but it is clear that it placed a substantial burden on the state.[3]

■ The district court's analysis, while purporting to rely on the principles of Townsend v. Sain, ante, upsets the careful adjustment of the sensitive state and federal interests made by the Supreme Court in that and other cases, and by Congress in 28 U.S.C. § 2254. There is no question but that under Brown v. Allen, 1953, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469, a federal habeas judge must independently apply the correct constitutional standard to the historical facts underlying petitioner's constitutional claim regardless of how fairly and completely the claim has been litigated in the state courts. 28 U.S.C. § 2254(d) provides, however, consistently with Townsend v. Sain,[4] that in the absence of any of the circumstances there enumerated, 28 U.S.C. § 2254(d) (1)–(8), making a hearing mandatory, the federal court is bound by the state court's finding of historical facts unless the petitioner offers convincing evidence that they are erroneous. Thus while, as the lower court correctly observed, the burden of proving consent is generally on the government, see Bumper v. North Carolina, 1968, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797, even in habeas cases, *see* Montana v. Tomich, 9 Cir., 1964, 332 F.2d 987, 989–990; Simmons v. Bomar, 6 Cir., 1965, 349 F.2d 365, when the state court, following a full and fair hearing, has found consent, the petitioner, under section 2254(d), has the burden of disproof.

■ Our first question must, accordingly, be whether the district court could warrantably find, as it did, that the state proceedings failed the only statutory test which it articulated, viz., that the state court's findings were not fairly supported by the record. See 28 U.S.C. § 2254(d) (8). On what the court based this finding is unclear. Its

---

3. For example, the court spoke of "the utter void of evidence showing that the defendant's verbal act was done 'knowingly and intelligently.'" 332 F.Supp. at 850. "I find the State has failed in this burden." (851). "The burden on the government of showing consent to search would seem to be two-fold—" (853). "It certainly has not been established beyond argument that petitioner was advised of his rights. . . ." (853). Nowhere in the opinion is there

a recognition of any burden upon the petitioner.

4. *Townsend* is addressed to the question of when a federal evidentiary hearing is mandatory. Section 2254, on the other hand, is concerned with the extent of the burden of proof on the petitioner at such a hearing, whether the hearing is mandatory or discretionary. *See generally*, Developments in the Law—Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1140–42 (1970).

opinion shows no close examination of whether individual findings of fact were fairly supported, but suggests rather that it simply was convinced that the Rhode Island court's finding of consent was incorrect. The difficulty here is that such a conviction does not, of itself, warrant the conclusion that the state court's findings of historical facts were faulty. *See* Developments in the Law—Federal Habeas Corpus, ante n. 4, at 1137. Even if the state court's legal theory were incorrect, as the district court found, its findings of fact are nevertheless presumed correct unless its legal error either distorted the focus of its hearing, or made it impossible to infer the factual findings on which the court based its legal conclusions. The district court made no findings on these questions either way. We are convinced that the 1964 hearing suffers neither disability. The findings of fact on which the state court based its decision are either express, or easily inferred, *see* Leavitt v. Howard, ante, and, since the factual issues and most of the testimony presented in the district court were essentially the same, we can find no basis for faulting the state focus.

 No useful purpose would be served by reciting in detail, although we have examined it in detail, the state court evidence. Suffice it to say that we cannot agree with the district court that the 1964 record did not fairly support the state court's acceptance of the police account. We read the "fair support" standard as authorizing the district court in habeas cases to review the state court findings by the same "clearly erroneous" standard employed in federal appellate review of trial findings on constitutional facts. *See* Developments in the Law—Federal Habeas Corpus, ante at 1133. The Supreme Court has defined a finding as "clearly erroneous" when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 1948, 333 U.

S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746. The record does not leave us with any conviction, much less a firm one, that the state court was mistaken, on the basis of the record before it, in believing the testimony of the several police witnesses rather than the uncorroborated testimony of petitioner and his wife.

Petitioner, at oral argument, alternatively contended in this court that the district court selected the wrong subdivision of section 2254(d), and that it should have found the state court hearing inadequate because "the material facts were not adequately developed," 28 U.S.C. § 2254(d) (3), in that all the relevant evidence was not introduced. Petitioner asserts that the district court was given a more complete record in three respects: (1) as to whether he was told his rights; (2) whether he was denied assistance of counsel; and (3) whether the police pressured him to consent. The difficulty with advancing that claim in this court is that there is no district court finding, unless the negative implication arising from the absence of any, that in fact the state court development had been inadequate. It happens, however, that the record is sufficient to enable us to draw our own conclusions. As against the 1964 voir dire the only asserted new evidence as to points (1) and (2) was testimony by petitioner's lawyers that the police refused for several hours to honor their (not his) demands that they be allowed to see him. However, petitioner's own brief, although arguing in another connection (to maintain that he had exhausted his state court remedy), pointed out that the superior court habeas petition was based in part on the lawyers' testimony, "[t]he presence of counsel in the station house is outlined; and the Affidavit of attorney Abraham Belilove, one of those waiting fruitlessly . . . was introduced." On this basis petitioner, if he did not disprove, at least did not "establish," 28 U.S.C. § 2254(d), that the "material facts were not adequately developed."

The only new matter was with respect to point (3). In the voir dire proceedings the police evidence had been that after telling petitioner that he was suspected of murder he was told to empty his pockets. He placed the car keys on the table in front of him, and one of the officers then said, "I would like to look at your car." Petitioner replied, "Sure; go ahead," and picked up the keys and tossed them, and the officer reached out his hand and caught them. At the voir dire, petitioner did not contradict this account. Before the district court, several years later, petitioner testified that the officer held out his hand before petitioner tossed the keys. This the court seemingly felt changed the picture from one of acceptance of a request to coercion. We do not believe that the change was significant enough to justify reversal of the state court conclusion. A request may be made by gesture as well as by words. The best judge of how the gesture was understood is not the court, but petitioner himself. We quote verbatim:

> District Court. "Well then, I conclude from that that he never demanded to look at your car."

> Petitioner. "No, I wouldn't say he demanded to look at the car; no."

The real difference of opinion, and the rock on which the state's case foundered in the district court, was that court's conception of what may not be voluntary consent. Its efforts to distinguish our decision in Gorman v. United States, 1 Cir., 1967, 380 F.2d 158, do nothing to lessen our conviction that its conception of consent disregards the principles we there enunciated for judging whether a consent to a search meets constitutional standards. Relying on Higgins v. United States, 1954, 93 U.S. App.D.C. 340, 209 F.2d 819, the district court took the view, in substance, that no one would voluntarily consent to a procedure which would lead him into trouble.[5] While in *Gorman* we did not expressly disapprove *Higgins*, instead finding it distinguishable, we did disapprove its reasoning. We pointed out that "the pressure exerted on a criminal by the realization that the jig is up is far different from the deliberate or ignorant violation of personal right that renders apparent consent ineffective." 380 F.2d at 165.[6] The soundness of that principle is dramatically revealed in North Carolina v. Alford, 1970, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162, where the Court held that a defendant might voluntarily plead guilty even though he claimed to believe he was innocent. If at the time that a particular question is asked there is no agreeable answer, the fact that the answer chosen is not a pleasant one does not mean necessarily that it was not voluntarily selected. The alternative might have seemed worse.

The application of that principle to consent to a search is particularly apt. A defendant may believe that search is ultimately inevitable whether he consents or not.[7] In such circumstances a suspect might well feel he is better off to consent than to oppose. The facts of the case at bar suggest that such may well have been petitioner's dilemma. As in *Gorman*, ante, the evidence was much less obviously incriminating than in *Higgins*. It is true that the district

---

5. "Did the petitioner have a choice? Only artless simplicity can compel such a conclusion." 332 F.Supp. at 851. "Acquiescence to search without warrant is resignation—a mere submission in an orderly way to the actions of the arresting agents. It is not that consent which constitutes unequivocal, free and intelligent waiver of a fundamental right." 332 F. Supp. at 855.

6. *See also* Robbins v. MacKenzie, 1 Cir., 1966, 364 F.2d 45, 50, cert. denied 385 U.S. 913, 87 S.Ct. 215, 17 L.Ed.2d 140, where we said, "Bowing to events, even if one is not happy about them, is not the same thing as being coerced."

7. In fact the court said as to the present case in another connection, "This is just the sort of a situation in which the police could reasonably be expected to get a warrant." 332 F.Supp. 854 n. 4.

court found that the knife was neither well-concealed nor ostensibly innocent, but "was a broken, blood-stained knife which fit the elongated washer found under the victim's body," and that, therefore, inferentially, petitioner must have realized the search would incriminate him. The evidence, however, does not support the court's colorful language. According to testimony of the officer who inspected the knife, the bloodstains were minute specks of blood. Petitioner might reasonably have believed that he had wiped the knife so clean that it would not implicate him. It seems hardly likely that he realized that a washer had come off, or that it reposed beneath the victim. He might well have felt that the police would pay less attention to the knife if he gave them free access to it than if he engendered suspicion by a show of unwillingness. We cannot agree with the district court's conclusion that it would be unreasonable for a superior court judge to draw that inference.

In sum, we do not find that any of the excepting conditions listed in section 2254(d) existed, so as to remove the burden of proof from the petitioner. In such posture we find no reason for the district court to disregard, or to disagree with, fully supported—although not compelled—state court findings.

■ We close with one general observation with regard to consent to search. If the police have over-reached and obtain oral admissions, they have received something they otherwise would not have. As to a search, on the other hand, if the only result of the apparent consent is a premature search, suppressing the evidence because of police reliance on a faulty consent has the effect of suppressing for all time what, but for misplaced reliance on an apparent consent, the police would have been entitled to find later. The indignant protest in petitioner's brief,[8] calls for what might seem a highly disproportionate penalty upon the state under such circumstances.

*See generally,* Friendly, Is Innocence Irrelevant? 38 U.Chi.L.Rev. 142, 160–64 (1970). To hold, as did the district court, that expressions of consent relieve officers of the need of obtaining a warrant only when the speaker is not aware that the search will disclose damaging evidence, would place the police in an especially poignant dilemma. The officers may not be in a position to know beforehand whether a search will produce incriminating evidence, or whether the suspect is aware that it will. As the Second Circuit has observed, such a ruling would therefore "enable experienced criminals to lay traps for officers who, relying on the words of consent, failed to secure a search warrant that would have been theirs for the asking." United States v. Gorman, 2 Cir., 1965, 355 F.2d 151, 159, cert. denied 384 U.S. 1024, 86 S.Ct. 1962, 16 L.Ed.2d 1027. We acknowledge that the evidence here does not suggest a wily and experienced criminal. Nevertheless, the general observation remains apt, and before enforcing such a penalty we believe it would be well to be sure that the state court erred.

Reversed. Petition dismissed.

---

8. "The Providence Police Department in this threw caution to the wind, choosing not to secure a search warrant to examine the vehicle even though there was ample time to do so."