Thomas R. KNOTT, Jr.

v.

Francis A. HOWARD, Warden.

Civ. A. No. 5170.

United States District Court,
D. Rhode Island.

July 22, 1974.

Thomas R. Knott, pro se.

Richard J. Israel, Atty. Gen., Donald J. Ryan, Asst. Atty. Gen., Providence, R. I., for respondent.

OPINION

DAY, District Judge.

This is a petition for a writ of habeas corpus pursuant to the provisions of 28 U.S.C. § 2241 et seq. The petitioner is now serving a life sentence in the Rhode Island Adult Correctional Institutions, in Cranston, Rhode Island, and is in the custody of Warden James Mullen, successor to the respondent. Said life sentence was imposed on the petitioner by the Superior Court of the State of Rhode Island, on April 15, 1970, following his conviction for murder in the first degree by a jury. He seeks to be released from the alleged unlawful custody to which he was committed after the imposition of said life sentence, or, in the alternative, an order for a new trial. The petitioner has filed his application for the Writ *pro se*.

In his petition, petitioner alleges that he is now actually imprisoned, restrained of his liberty, and detained under color of the authority of the State of Rhode Island, in the custody of the Warden of the Rhode Island Correctional Institutions; that this imprisonment is under the claim and authority of a judg-

ment of the Superior Court, State of Rhode Island, in Indictment No. 31716, rendered on the 15th day of April, 1970; that this judgment of the Superior Court was entered after a jury returned a verdict of guilty to the charge of first degree murder. The petitioner further alleges that said imprisonment is illegal and in violation of his rights secured by the Constitution of the United States in that confessions obtained from him admitting the murder for which he was tried and convicted were admitted into evidence against him in violation of his Fifth and Fourteenth Amendment rights against self-incrimination, his Fourteenth Amendment right to due process of law, and his Sixth Amendment right to the assistance of counsel. Still further, the petitioner alleges that the confessions so obtained and admitted in evidence were obtained in a manner contrary to that required by the Constitution as indicated by the United States Supreme Court in Escobedo v. Illinois; that these confessions were obtained as derivative fruits of prior illegal· interrogations; and that said confessions were so obtained at a time when he was not mentally competent to volunteer a knowing, intelligent, meaningful and trustworthy statement. Finally, the petitioner alleges that he has raised the claims contained in the instant petition in a bill of exceptions to the Rhode Island Supreme Court following the Superior Court judgment of April 15, 1970, and that these claims were decided unfavorably to petitioner by the Supreme Court in its opinion of March 22, 1973; and that he has made no previous application for the Writ sought in the instant petition.

The petitioner alleges the following facts in support of his legal claims, *supra*: (A) As to his *Escobedo* claim, that the confessions were admitted in evidence in April, 1970, after the date on which *Escobedo* became effective; that he was arrested by Pawtucket, R. I. and Attleboro, Mass. police on January 26, 1963, in connection with said murder as a prime suspect; that during his de-

tention following this arrest, petitioner was questioned by the police concerning said murder, but at no time during this detention was he given the *Escobedo* warnings; that during his detention he made four confessions; two were made to the police at the Pawtucket, R. I. police headquarters, one was made to an officer of the East Providence, R. I. police at the State Police barracks in Scituate, R. I., and one was made before the petitioner's mother while petitioner was still in police custody at the Rhode Island Family Court, Providence, R. I. Continuing his factual allegations, petitioner asserts that the first two confessions having been found constitutionally inadmissible, the third and fourth confessions were admitted in evidence against the petitioner in the trial which led to his conviction. He claims that these last confessions were not spontaneous, but elicited from him as the result of questioning and prompting, and as such, were made under circumstances requiring the *Escobedo* warnings.

In regard to his derivative fruits claim, the plaintiff asserts the following facts: that following a jury verdict of guilty and a judgment against the petitioner by the Superior Court of the State of Rhode Island, entered on March 2, 1966, in a previous trial for the instant murder, he prosecuted a bill of exceptions to the Supreme Court of Rhode Island, alleging the unconstitutionality of all four of his confessions which had been admitted in evidence against him; that the Rhode Island Supreme Court sustained his exceptions to the first two confessions (given at Pawtucket), but "did not pass" on the other two (those given in Scituate and at the Family Court); that these latter confessions were obtained during the same detention as the former, without benefit of any *Escobedo* warnings, under conditions which, from petitioner's point of view as a police detainee, were "even more intimidating" than those under which the first two statements were obtained; and finally, that the "emotional effect" of having given the first two statements

carried over and created a situation favorable to the police in its tendency to prompt further statements.

As to his mental competency claim, the petitioner alleges the following facts: that he "had been in a catatonic state" for approximately five hours prior to his alleged confession at the Scituate State Police barracks; that there was testimony at his trial indicating that he was observed hallucinating on the day following his alleged making of the Scituate statement; and that on March 19, 1963, shortly after the time of the confessions at issue, petitioner was "declared mentally ill, classified 'schizophrenic' and admitted to the Criminally Insane Ward at the Rhode Island Medical Center in Cranston, R. I.

In addition to his petition, the petitioner also has submitted to the Court an extensive memorandum of law, with an Appendix containing the entire testimony of a psychiatrist called as a witness at an earlier hearing, the opinion of the Rhode Island Supreme Court following petitioner's first trial for the murder involved herein (March 2, 1966), the ruling of the Rhode Island Superior Court on petitioner's motion to suppress prior to the second trial, the opinion of the Rhode Island Supreme Court as to petitioner's bill of exceptions filed following his second trial (March 22, 1973), and an affidavit and articles purported to support petitioner's claim that the confessions admitted into evidence were involuntary and obtained in violation of his constitutional rights.

In his answer the respondent admits that the petitioner is in his custody by virtue of a judgment of conviction in the Superior Court of Rhode Island on Indictment No. 31716, following a jury verdict of guilty to the charge of first degree murder. The respondent denies that the restraint of the petitioner is illegal, and that the admission of the confessions into evidence at the petitioner's trial violated his constitutional rights. The respondent asserts that these constitutional claims were decided adversely to the petitioner in the Rhode Island Superior Court in a motion to suppress hearing, and by the Rhode Island Supreme Court in State of Rhode Island v. Knott, 302 A.2d 64 (1973) [hereinafter *Knott II*]. The respondent admits that petitioner has made no previous application for a Writ of Habeas Corpus. Answering petitioner's factual allegations, respondent asserts that the two confessions admitted into evidence were made without interrogation, and were found to be spontaneous by the Rhode Island Superior and Supreme Courts; that the interrogation occurred on January 26, 1963, before the *Escobedo* opinion had been rendered and therefore no *Escobedo* warnings were given; and further denies that the conditions under which the last two confessions were obtained were more intimidating than those under which the first were obtained, or that the first two statements carried over and created a situation favorable to the police in their tendency to prompt further statements. Finally, the respondent specifically denies that the petitioner was in a "catatonic" state for the five hours prior to his making the alleged statement at Scituate, and respondent further asserts that he will rely on the proof contained in the trial record as to petitioner's mental competency claim.

The full transcript of the proceedings relating to the said Indictment No. 31716 has been submitted to this Court, which includes the transcript of the hearing on said motion to suppress, and of the retrial itself. The Court has also received and considered the State's brief submitted to the Rhode Island Supreme Court in the matter of petitioner's Bill of Exceptions, *Knott II supra.*

## FACTS

The facts and travel of this case as revealed in the record are as follows: On December 22, 1961, Nancy Ann Frenier, of Pawtucket, Rhode Island, was reported to the police as missing, and the police later located an automobile which she was purported to have been driving, in East Providence, Rhode Island. On

March 19, 1962, the mutilated body of Nancy Ann Frenier was found in the waters of the East Providence reservoir adjacent to the location of the car found earlier by the police.

The petitioner was a prime suspect in the Frenier murder from the time of its discovery, and was questioned in connection with the East Providence and Rhode Island State Police investigation into said murder on two occasions prior to the arrest which ultimately culminated in the conviction challenged herein. These prior interrogations of petitioner regarding his possible involvement in the Frenier murder were conducted by Captain Theodore Hilton of the East Providence police, the same person to whom petitioner made the incriminating statements on January 27, 1963, at the Scituate State Police barracks which are here in question.

On January 25, 1963, a housewife residing in South Attleboro, Massachusetts, was found dead in her home, apparently the victim of murder. A lead discovered in the course of the investigation into this murder indicated that a car owned by petitioner's parents might have been in the vicinity of the murder at the time it occurred. On January 26, 1963, sometime after ten P. M., the petitioner and his parents were intercepted by a detail of Pawtucket and Attleboro police officers as they left a Pawtucket theatre, where the police had staked out their family car. Petitioner and his parents were asked to come to the Pawtucket police station. The petitioner was then seventeen years and eight months old.

At approximately 10:30 P.M., when he arrived at the station, petitioner was separated from his parents, taken into the office of the deputy chief of the department, and interrogated. During the period of time between the commencement of the interrogation and approximately midnight, the petitioner made several incriminating statements, two of which were later admitted into evidence against him at his first trial for the Frenier murder. *See Knott II, supra,* 302 A.2d at 65.

The petitioner was first questioned by a Sergeant Joseph B. Barry of the Pawtucket police in connection with the Attleboro slaying. During this interrogation petitioner admitted that he had killed the woman in South Attleboro and also the said Nancy Ann Frenier.

After his admission to Sergeant Barry had been made, Sergeant Barry referred the matter to his superior, Lieutenant Joseph Roy. The petitioner then spontaneously blurted out that he had killed Nancy Ann Frenier, and described in some detail the circumstances of the homicide.

At no time during the course of his interrogation at the Pawtucket police station was the petitioner given any warning concerning his right to the assistance of counsel during custodial interrogation or of his right to remain silent during such interrogation.

After said admissions were obtained, the questioning of the petitioner terminated about midnight. He remained silent in a chair until about 5:45 A.M. on January 27, 1963, when the Pawtucket police gave Captain Hilton of the East Providence police department custody of the petitioner. Captain Hilton had been in charge of that department's investigation of the death of the said Nancy Ann Frenier.

Captain Hilton then secured the petitioner with handcuffs and they entered a state police car with Lieutenant Morgan of the state police and an unidentified trooper, and proceeded to the State Police barracks in Scituate, Rhode Island. It is undisputed that the purpose of their trip was the planned interrogation of the petitioner concerning the murder of said Nancy Ann Frenier. The trip to the barracks took about twenty-five (25) to thirty (30) minutes. According to the testimony, no conversation occurred between Captain Hilton and the petitioner until shortly before they reached the State Police barracks. At that time, petitioner asked Captain Hil-

ton: "Captain, where are we going?" To this inquiry, Captain Hilton replied: "We're going to Scituate police barracks." This was the only conversation between Captain Hilton and petitioner during this trip.

At the State Police barracks they went into an office occupied by Lieutenant Morgan where petitioner's handcuffs were removed and he was allowed to sit down. At this point petitioner said to Captain Hilton: "I'd like to speak to you alone." Captain Hilton then requested Lieutenant Morgan to leave, which he did. Captain Hilton then sat in a chair opposite the petitioner who then proceeded to confess in detail to the Frenier murder without any interruption by Captain Hilton. The petitioner talked for about 15 to 20 minutes and Captain Hilton asked no questions of him. During his trial Captain Hilton conceded that he had not given the petitioner the warnings as to his rights to obtain assistance of counsel and to remain silent.

The next morning, January 28, 1963, the petitioner was taken to the Family Court in Providence, Rhode Island for arraignment on the charge of having murdered said Nancy Ann Frenier. While sitting at a table in the courtroom and while in custody of the East Providence police awaiting the opening of Court, petitioner was overheard while in a conversation with his mother, telling her that he did kill Nancy Ann Frenier.

The Family Court, after a hearing, waived jurisdiction over the petitioner, and subsequently, on February 6, 1963, the petitioner was indicted and charged with the murder, on December 22, 1961, of the said Nancy Ann Frenier, in the City of East Providence, Rhode Island.

The petitioner was not deemed competent to stand trial until sometime in 1965. The trial started on February 1, 1966 in the Superior Court of Rhode Island, and the jury returned a verdict of guilty. The incriminating statements made by the petitioner to Sergeant Barry and Lieutenant Roy of the Pawtucket police department on the night of Janu-

ary 26, 1963, and to Captain Hilton at the Scituate barracks on January 27, 1963, were admitted into evidence by the trial judge during said trial.

The petitioner then prosecuted a bill of exceptions to the Supreme Court of Rhode Island. In its opinion, dated January 23, 1969, the Supreme Court sustained the exceptions of the petitioner to the rulings of the trial judge admitting into evidence the statements he had made to Sergeant Barry and Lieutentant Roy of the Pawtucket police department on the night of his arrest. State v. Knott, 105 R.I. 71, 249 A.2d 421 (1966) (hereinafter Knott I). This ruling by the Supreme Court of Rhode Island was founded upon its application of the rule established by the United States Supreme Court in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). See Knott I, 105 R.I. at 76, 249 A.2d at 424. The judgment of said Superior Court was reversed and the case was remanded to said Superior Court for a new trial in accordance with said opinion. In said opinion the Supreme Court specifically stated:

" . . . Because we are of the opinion that a new trial must be had in this case, we refrain from passing upon the question of whether the disclosures made by defendant to Captain Hilton of the East Providence police were spontaneous declarations and therefore outside of the scope of Escobedo." Knott I, supra, 105 R.I. at 79, 249 A.2d at 425.

Prior to the retrial of the petitioner, an extensive hearing was held on petitioner's motions to suppress the incriminating statements made by petitioner to Captain Hilton at the Scituate barracks, and to his mother in the Family Courtroom. The Superior Court found that said statements were spontaneous and voluntary and entered a decision denying said motion on March 30, 1970. The retrial of the petitioner began on April 6, 1970 before the same Justice of the Superior Court sitting with a jury, and on April 15, 1970, the jury returned a ver-

dict of guilty of murder in the first degree. During said trial, both the Scituate barracks and Family Court statements of petitioner were admitted into evidence over objection by counsel for the petitioner.

The petitioner then prosecuted another bill of exceptions to said Supreme Court, contending that said Superior Court erred in its rulings admitting said statements. The Supreme Court of Rhode Island, on March 22, 1973, overruled said exceptions and affirmed his conviction. *Knott II*, 302 A.2d 64 (1973), *supra.*

The opinion of said Supreme Court indicates that the petitioner asserted the same contentions before said Supreme Court as he does before this Court and he seeks reconsideration of said contentions.

### ISSUES

The petition now before this Court calls into question both rulings of law and findings of fact made by the Rhode Island state courts in their consideration of this case. The standards to be applied in this proceeding are established by statute, 28 U.S.C. § 2254, and have been definitively construed through judicial review. See Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Leavitt v. Howard, 462 F.2d 992 (1st Cir. 1972). After weighing petitioner's claims in the light of the extensive factual record presented to the Court in this action, against these well established standards governing both the granting of a Writ and any relief sought pursuant to it, it is the Court's considered opinion that petitioner's claims are without merit, and that his rights were fully heard and correctly determined in the proceedings in the Courts of Rhode Island in accordance with federal law.

In arriving at this conclusion, the Court accepts as accurate the facts found by the trial judge, supplemented by the uncontradicted evidence revealed in the record. Furthermore, the Court concludes that the decisions of said Superior Court and said Supreme Court regarding the admissibility of certain evidence against the petitioner were correct as a matter of law.

■ As to the factual basis for said rulings that petitioner's inculpatory statements were admissible, this Court is bound by the provisions of 28 U.S.C. § 2254(d) which require a federal court considering an application for a writ of habeas corpus to presume the accuracy of findings of fact made by the state courts except under certain limited circumstances enumerated in sub-parts one through eight of said section. Townsend v. Sain, *supra;* Leavitt v. Howard, *supra.* It is the Court's opinion that none of these excepting circumstances is present in this case, and it is apparent that the trial court did resolve the merits of evidentiary conflicts at a full and fair hearing at which the material facts were adequately developed. For these reasons, the Court considers itself bound by the factual determinations of the trial justice in this case. However, the Court is nevertheless bound to make its own determination as to the legal claims presented in this petition:

> "Although the district judge may, where the state court has reliably found relevant facts, defer to the state court's findings of fact, he may not defer to its findings of law. It is the district judge's duty to apply the applicable federal law to the state court fact findings independently." Townsend v. Sain, *supra,* 372 U.S. at 318, 83 S.Ct. at 760; United States v. Illinois, 329 F.2d 354 (7th Cir. 1964). *See generally,* Sokol, Federal Habeas Corpus (2d ed. 1969) at p. 113 et seq.

■ The question of the voluntariness of a confession is a mixed issue of law and fact, and is resolved by a court's application of a legal standard to the historical-fact determinations it has made regarding the circumstances surrounding the confession. Townsend v. Sain, *supra,* 372 U.S. 309 at n. 6, 83 S.Ct. 745 (1963); Culombe v. Connecticut, 367 U.S. 568, 603, 606, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961); Rogers v. Richmond, 365 U.S.

534, 546, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961); Brown v. Allen, 344 U.S. 443, 507, 73 S.Ct. 397, 97 L.Ed. 469 (1953); Kerrigan v. Scafati, 348 F.2d 187, 189 (1st Cir. 1965); Imbler v. California, 424 F.2d 631 (9th Cir. 1970), cert. den. 400 U.S. 865, 91 S.Ct. 100, 27 L.Ed.2d 104. In this case, the Court does not challenge the validity of the state court's determination of historical facts, and concludes that the state courts properly applied the correct legal standard.

In making its required "independent determination of the legal effect of the facts upon which rest a claimed violation of a "federal right". Hamric v. Bailey, 386 F.2d 390, 393 (4th Cir. 1967), the Court has carefully analyzed the facts and exhaustively surveyed the relevant law. A summary of that analysis and survey follows:

■ The initial issue presented by the instant petition involves compliance with the *Escobedo* standards for the admission of inculpatory statements. As noted above, all of the incriminating statements were made by the petitioner without the *advice of counsel*, and he was not forewarned that he had the right to remain silent and the right to have the assistance of counsel. It is understandable that the petitioner was not so informed since the *Escobedo* requirement that such information be given an accused was not established until 1964, some time after the events in question here. However, as the Rhode Island Supreme Court correctly noted, *Knott II, supra,* 302 A.2d at page 65, n. 1 *Escobedo* applied to all trials begun after June 22, 1964, Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), and thus its requirements and exclusionary requirements were applicable to the petitioner's trials, the first of which began on February 1, 1966, and his retrial which began on April 6, 1970.

For the challenged statements made by the petitioner to Captain Hilton at the Scituate barracks and in the Family Courtroom to have been properly admissible in evidence in the light of the un-disputed lack of warnings there must have been established the existence of circumstances excepting such statements from said *Escobedo* exclusionary rule. Petitioner contends that no such circumstances existed and that said statements were erroneously admitted into evidence during his retrial. The respondent contends that the petitioner's statement at said Scituate barracks and his utterances in the courtroom of said Family Court were spontaneous and voluntary and not made in the course of police interrogation, and therefore not subject to the requirements of the ·ruling in *Escobedo.* *See* Miranda v. Arizona, 384 U.S. 436, 478, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Both the trial justice of said Superior Court, in considering the merits of the petitioner's motion to suppress the use of said statements as evidence ˙against the petitioner, and the Supreme Court, in considering the merits of petitioner's bill of exceptions, *Knotts II, supra,* 302 A.2d at 68, found said statements were not obtained as the result of interrogation by police and ruled that said statements were spontaneous and voluntary and were properly admissible in evidence.

■■ The finding of the trial justice that said statements were made by the petitioner without any interrogation by the police is clearly supported by the evidence in the record. The trial justice found such evidence credible as did said Supreme Court. It is not within the province of this Court to challenge the *admission of evidence as credible* where the record, as here, clearly supports such a finding. Townsend v. Sain, *supra;* Leavitt v. Howard, *supra.* The fact that the petitioner was in custody for the purpose of an investigation of the murder of said Nancy Ann Frenier did not, as a matter of law, require that any voluntary and spontaneous statements proffered by the petitioner while in such custody be deemed to be inadmissible because of the absence of the required warnings when he was not then being interrogated. Miranda v. Arizona, *supra;* Parson v. United States, 387 F. 2d 944, 946 (10th Cir. 1968); United

States v. De Bose, 410 F.2d 1273, 1275 (6th Cir. 1969).

■ Nonetheless, even in the absence of interrogation, the courts of Rhode Island were required to determine the voluntariness of the statements made by the petitioner at the Scituate barracks and in the courtroom of said Family Court, according to the pre-*Escobedo* standards and in doing so said courts were required to consider the possible carry-over effect of petitioner's prior confessions. This calls for the determination of the primary legal issue presented by the instant petition: the admissibility of a confession obtained after a prior inadmissible confession. This issue has been considered by the courts on numerous occasions and there have been developed certain standards to be applied in resolving this issue. The important elements of these standards are the carry-over effect of the conditions under which the initial confession was obtained, and the effect of the initial confession on the will of the accused in the making of a later confession.

■■ The Supreme Court has never held that an inadmissible confession automatically precludes the admission in evidence of later voluntary confessions. What is required is that a later confession or confessions meet the test of voluntariness. Lyons v. Oklahoma, 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481 (1944). Application of this test requires a careful inquiry into all the attendant circumstances surrounding the challenged confession to determine its voluntariness. Blackburn v. Alabama, 361 U.S. 199, 206, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960). Under the well settled law, an important circumstance "surrounding the challenged confession" is the interrelationship between the later confession and the accused's earlier admission of guilt. *See, e. g.,* Darwin v. Connecticut, 391 U.S. 346, 88 S.Ct. 1488, 20 L.Ed.2d 630 (1968); Clewis v. Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967); United States v. Bayer, 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947).

■ The interrelationship between two confessions by an accused is generally capable of bipartite description, each of the two types of relationship having constitutional significance *vis a vis* the voluntariness of the later confession. The decided cases involving the legal issue of the admissibility of a confession obtained subsequent to an earlier inadmissible confession reflect two distinct types of "taint" that may render the later confession inadmissible in evidence as involuntary. The first species of "taint" is presented in the situation where the initial confession is determined to have resulted from physical or psychological coercion and the fear generated by such coercion remains in the accused's mind and prevents his later confession from being voluntary. *See, e. g.,* Beecher v. Alabama, 389 U.S. 35, 88 S.Ct. 189, 19 L.Ed.2d 35 (1967); Leyra v. Denno, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948 (1954).

The second species of "taint" is where the mere existence of the previous confession stimulates the giving of the second confession. In this situation, the accused, unaware that his initial confession is inadmissible, mistakenly believes that nothing is to be lost by his making another confession since "the cat is already out of the bag". *See* Darwin v. Connecticut, *supra,* 391 U.S. at 351, 88 S.Ct. 1488; United States v. Bayer, *supra,* 331 U.S. at 540–541, 67 S.Ct. 1394.

The petitioner contends that both the statements made by him at said Scituate barracks and in said Family Court should have been excluded during his trial because they were constitutionally tainted in that they were the derivative of his earlier interrogation at the Pawtucket police station. In support of this contention he argues that the atmosphere of coercion which allegedly led to his making said earlier statements at the Pawtucket police station carried over and thus served to induce the later statement made by him to Captain Hilton at said Scituate barracks, and his admission to his mother in said Family Court on the following morning.

Said trial Justice and the Supreme Court specifically found that the statements given by the petitioner at the Pawtucket police station on January 26, 1963 were voluntary and not the result of any coercion. The Supreme Court, however, held that said statements were legally inadmissible in his trial because of the failures of the officers who had interrogated him to advise him of his rights as required by *Escobedo* before undertaking said interrogation and set aside his conviction.

In view of the constitutional significance of the possibility of a carryover of coercion from the interrogation at the Pawtucket police station to the statements made by the petitioner to Captain Hilton at the Scituate barracks, an evaluation of the voluntariness of the statements made at the Pawtucket police station is of much importance in this case even though said statements were not introduced in evidence during petitioner's retrial. The trial justice and the Supreme Court specifically found that said statements were voluntary and not the result of any coercion and that they were inadmissible solely because of the failure of the interrogating officers to give the warnings and rights as prescribed in *Escobedo*. Accordingly, they found that there was no atmosphere or conduct, physically or psychologically coercive, toward petitioner and concluded that these later statements made by the petitioner were completely voluntary and uttered under circumstances which did not require the giving of the *Escobedo* warnings.

The state courts in weighing the petitioner's claim that his confession to Captain Hilton was part of one continuous coercive process that began at the Pawtucket police station, did not explicitly cite the failure to provide the *Escobedo* warnings as part of the "totality of circumstances" to be evaluated in their determination of the voluntariness of his Pawtucket statements. The non-inclusion of this factor appears to be attributable to the fact that those courts construed such warnings simply as a requirement of the prophylactic rule established by *Escobedo*.

■ This Court, on the other hand, is persuaded that the substantive test for voluntariness, as developed by the United States Supreme Court, prior to its opinion in *Escobedo,* requires that the "failure to warn" factor be considered along with the other components of the "totality of circumstances" as part of the process of determining the voluntariness of confessions. *See* Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959). The importance of this factor was emphasized in *Escobedo* and most fully described in *Miranda,* and the United States Supreme Court has unequivocally stated that custodial interrogation of an accused who has neither counsel nor has been warned of his right to remain silent and have the assistance of counsel is to be considered as part of the "totality of circumstances" which together may amount to coercion sufficient to overpower the will of the accused. Procunier v. Atchley, 400 U.S. 446, 453, 91 S.Ct. 485, 27 L.Ed.2d 524 (1971); Davis v. North Carolina, 384 U.S. 737, 740, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966).

The Supreme Court clearly recognized that the investigation of the murder of Nancy Ann Frenier had centered on the petitioner at the time of his arrest on January 26, 1963, and that the petitioner was the subject of custodial interrogation during the evening of that date at the Pawtucket police station. *Knott II, supra,* 302 A.2d at 70. As a result of that finding, the *Escobedo* warnings were held to be required, and the statements obtained from the petitioner as a result of this interrogation were ruled inadmissible. *Ibid.* However, the trial justice unequivocally declared that he disbelieved the petitioner's testimony as to the exertion of any psychological or physical coercion upon him by the police at that time, and found that the petitioner's confession of the murder of Nancy Ann Frenier to have been voluntary and

without any coercion. The Supreme Court concurred in this finding by the trial justice.

The petitioner raises the question as to whether the failure of the police to inform him of his rights prior to his interrogation at the Pawtucket police station was, in and of itself, sufficient to render involuntary his confessions made at that time. In fact, the underlying issue here is whether *Escobedo* establishes simply a prophylactic rule rendering certain evidence inadmissible, or whether it expands the substantive test for voluntariness.

Although the decision in *Miranda* is not applicable to the petitioner's retrial, Jenkins v. Delaware, 395 U.S. 213, 89 S.Ct. 1677, 23 L.Ed.2d 253 (1969), the decision of the Supreme Court does explain its earlier decision in *Escobedo* which was reaffirmed in *Miranda,* 384 U.S. at 442, 86 S.Ct. 1602. In *Miranda,* the Supreme Court spelled out its recognition of the powerful impact of police interrogation on an accused person, and the potential for abuse during such interrogation, 384 U.S. 445–458, 86 S.Ct. 1602. This recognition is the *raison d'etre* for the establishment of the warning requirements stated in *Escobedo* and *Miranda.* However, neither of these cases holds that confessions obtained from an uniformed accused who has been subjected to custodial interrogation are always involuntary. It is clear that the Supreme Court prescribed the warnings requirement to prevent overbearance of the will of an accused which was deemed likely under such circumstances. The issue of whether or not such overbearance actually occurred is to be determined by the legal test for voluntariness, of which the failure to warn is one relevant factor. Procunier v. Atchley, supra; Davis v. North Carolina, supra. The distinction between the *Escobedo* and *Miranda* exclusionary rules, and the substantive test for voluntariness was noted by the Supreme Court in the consideration of the retroactivity of those rulings. Johnson v. New Jersey, supra, 384 U.S. at 730, 86 S.Ct. 1772.

■ I concur in the findings of said trial justice and the Rhode Island Supreme Court, *Knott II*, 302 A.2d at 68–70, that the petitioner's initial confession was not the product of either physical or psychological coercion in the traditional sense. Furthermore, in addition to the absence of overtly coercive tactics, I find, in the light of all the circumstances shown by the record which accompanied the interrogation of the petitioner at the Pawtucket police station, including the failure to warn the petitioner of his right to counsel, his lack of counsel, his age and education, the time and length of his interrogation, and other details noted by the trial justice, that his determination that the petitioner's statements made during said interrogation were voluntary was not incorrect as a matter of law.

As noted above, the fact that a prior confession is inadmissible, either due to lack of voluntariness or failure to comply with some procedural requirement, such as the *Escobedo* or *Miranda* rules, does not automatically preclude the use of subsequent confessions. The later confessions, if they are to be admitted into evidence against an accused must be shown to be voluntary. Darwin v. Connecticut, supra; Lyons v. Oklahoma, supra; United States v. Bayer, supra. Nonetheless, it becomes my duty to determine whether any compulsion of whatever nature or however infused, propelled or helped to propel the confession which he made to Captain Hilton at said Scituate barracks. Culombe v. Connecticut, 367 U.S. 568, 602, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961).

■ In view of this Court's determination that the statements made by the petitioner at said Pawtucket police station were voluntary, I find that the later statement given by him to Captain Hilton at the Scituate barracks was not part of any coercive process begun at said Pawtucket police station. The statements there given were inadmissible in evidence solely because of the failure of the interrogating police officer to advise the petitioner of his

constitutional rights as required by *Escobedo,* and not because they were involuntary. Hence, there was no element of coercion that would carry over with respect to any subsequent statement or statements by the petitioner.

As I have hereinbefore stated, I agree with the finding of the trial justice that the petitioner's confession to Captain Hilton at the Scituate police barracks was spontaneously made by him without any stimulation from any interrogation by Captain Hilton.

Thus, this case is clearly distinguishable on its facts from Westover v. United States, 384 U.S. 436, 494–497, 86 S.Ct. 1602, 1639, 16 L.Ed.2d 694 (1966). In that case the accused had been subjected to fourteen (14) hours of continuous interrogation by local police without having been advised of his rights, and then delivered to agents of the F.B.I. for further interrogation. The latter, before interrogating the accused, advised him of his rights and during the course of their continued interrogation, the accused confessed to having committed the offense about which he was being interrogated. The Supreme Court ruled that said confession was inadmissible. However, in its opinion the Supreme Court stated:

> "We do not suggest that law enforcement authorities are precluded from questioning any individual who has been held for a period of time by other authorities and interrogated by them without appropriate warnings. A different case would be presented if an accused were taken into custody by the second authority, removed both in time and place from his original surroundings, and then adequately advised of his rights and given an opportunity to exercise them."

The first two conditions, described by the Supreme Court, existed in the instant case and the evidence establishes that the statements were made voluntarily at said Scituate barracks by the petitioner without any interrogation by Captain Hilton.

The Supreme Court in promulgating the test to be applied in determining the voluntariness of a confession by an accused, which is obtained subsequent to an earlier inadmissible confession, has ruled that if the conditions which made said earlier confession inadmissible have been removed prior to the obtaining of the second confession, the latter will be admissible in evidence. United States v. Bayer, supra, 331 U.S. at 541, 67 S.Ct. 1394, 91 L.Ed. 1654. In this case, the sole factor rendering the initial confession of the petitioner inadmissible was the retroactive application of the *Escobedo* prophylactic exclusionary rule which was not required under the circumstances existing when the petitioner made his voluntary disclosures to Captain Hilton. Petitioner was not then under interrogation by Captain Hilton. He made his statement spontaneously and voluntarily to Captain Hilton before any questions were asked of him.

As hereinbefore noted, the failure of the police to inform the petitioner of his constitutional rights is merely one factor to be weighed in assessing the voluntariness of the subsequent confession made after January 26, 1963. Although *Miranda* holds that such warnings are helpful in serving to dispel the aura of coercion which accompanies incomunicado custodial interrogation, the Supreme Court has not held such warnings to be a *sine qua non* for voluntariness. I do not accept the argument that *Miranda* requires that the isolated factor of a failure to warn is to be regarded as rendering a confession involuntary. On the contrary, the holding in *Miranda* and subsequent cases enunciating the legal test for voluntariness establish that the failure to warn has the limited effect described above, and serves to render confessions to which the *Miranda* rule applies inadmissible rather than involuntary. In view of the trial court's explicit finding that the petitioner was not subjected to any overtly coercive treatment at the Pawtucket police station when he made his first confession, the

petitioner's subsequent confession at the Scituate barracks cannot be said to have been tainted by reason of any earlier coercion. This case is clearly distinguishable from the overbearance found to have existed in Leyra v. Denno, Lewis v. Texas, and Beecher v. Alabama, all supra, which the United States Supreme Court deemed sufficient to render the subsequent confessions involuntary.

The petitioner also contends that his statements to Captain Hilton and those made in the Family Courtroom were inadmissible as tainted because these statements were involuntarily prompted by his emotional condition after having made said statements at the Pawtucket police station. This is the so-called "cat-out-of-the-bag" defect referred to in Darwin v. Connecticut, supra, and United States v. Bayer, supra.

Petitioner contends that once the police had illegally obtained incriminating statements from him, the pressures of having made these statements, that is, having "let the cat out of the bag", compelled him to make said later confessions. Thus, he claims, the later confessions were the products of the earlier inadmissible statements. With respect to this contention, the United States Supreme Court held in United States v. Bayer, supra, 331 U.S. at page 540, 67 S.Ct. at page 1398:

> "Of course, after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantage of having confessed. He can never get the cat back in the bag. The secret is out for good. In such a sense, a later confession always may be looked upon as fruit of the first. But this Court has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after those conditions have been removed."

The precise question involved herein is whether or not the confession obtained at said Scituate police barracks was obtained solely because of the petitioner's alleged erroneous belief that he had nothing to lose after having made said earlier confession, which was inadmissible only because the interrogating police officers failed to comply with the rules enunciated in *Escobedo*.

The trial justice did not explicitly address himself to this question in his decision on the petitioner's motion to suppress said confession made to Captain Hilton. He made no finding as to the motive of the petitioner for making said confession, but did find it to have been completely spontaneous and voluntary. Furthermore, the trial justice quoted with approval the following statement in the decision in Commonwealth v. White, 353 Mass. 409, 232 N.E.2d 335, 341 (1967):

> "We are not disposed to hold that because a person has made one or more confessions which fail to satisfy the *Miranda* standards nothing that he may thereafter say, *even in circumstances where the Miranda principles do not apply*, can ever be received in evidence. Whether the subsequent confession was likewise tainted would depend on the circumstances in which it was obtained." (Emphasis supplied)

The rule stated in Commonwealth v. White, supra, is consistent with that enunciated by the Supreme Court in United States v. Bayer, supra, 331 U.S. at 540–541, 67 S.Ct. 1394. The test, then, to be applied is whether the subsequent confession is voluntary, that is, made under such conditions and circumstances as to insulate it from the effect of the prior inadmissible confession.

There is significant evidence in the record, deemed credible by the trial justice and accepted by the Supreme Court of Rhode Island, that the petitioner *initiated* his conversation with Captain Hilton at said Scituate barracks, and then of his own accord, without being questioned, made a complete confession. Furthermore, there is no evidence what-

ever in the record to support the petitioner's allegation that Captain Hilton induced said confession by indicating his belief that the petitioner had murdered the said Nancy Ann Frenier or his acceptance of the statements made at the Pawtucket police station as being true.

There is no evidence that Captain Hilton led the petitioner to believe that he had irreparably implicated himself by his earlier admissions. The petitioner had remained silent for more than five (5) hours at the Pawtucket police station before being removed therefrom. He was then taken into custody by Captain Hilton, was handcuffed, and taken by motor vehicle from Pawtucket, Rhode Island to said barracks. During said trip, no questions whatever were asked of him. Upon his arrival at said barracks in Scituate said handcuffs were removed and petitioner was taken to one of the offices in said barracks. After he was seated therein, the evidence establishes that he requested Lieutenant Morgan of the Rhode Island State Police, who had accompanied him on said trip, to leave said office in order that he might talk privately with Captain Hilton. Lieutenant Morgan complied with his request and petitioner, without being questioned by Captain Hilton, made a second confession to him. All of these factors, when considered together, satisfy me that the circumstances existing at said Scituate barracks were sufficiently attenuated from what had earlier transpired to justify the conclusion that the mere existence of his earlier admissions did not overpower the will of the petitioner and induce him to incriminate himself involuntarily. In contrast to the situation described by Justice Harlan in his concurring opinion in Darwin v. Connecticut, supra, 391 U.S. at 351, 88 S.Ct. 1488, 20 L.Ed.2d 630, the petitioner, as indicated by his intermittent refusal to respond to questioning at Pawtucket, understood that further admissions "would increase his peril". Apparently, by the time he entered the Scituate barracks with Captain Hilton, he had determined on his own volition to tell the complete story of his murder of said Nancy Ann Frenier. In my opinion the petitioner's claim that his statement to Captain Hilton was induced by his emotional resignation arising out of his earlier confessions of guilt is an afterthought and completely without merit. I agree with the conclusion of the Supreme Court in *Knott II*, supra, 302 A.2d at 72:

"The defendant spontaneously and voluntarily made his statements to Hilton before any questions were asked. Moreover, the lack of interrogation for more than five hours and the transfer of custody from the Pawtucket police to Captain Hilton constituted a breach from what had occurred at the time the Pawtucket confessions took place. Under these circumstances the cat-out-of-the-bag rationale is too tenuous a basis upon which to establish a taint between the initial confessions in Pawtucket and the subsequent confession to Hilton."

I do not deem it necessary to indulge in any lengthy response to the petitioner's contention that his constitutional rights were violated by admitting into evidence statements he had made while awaiting a hearing in the Family Court on the morning of January 28, 1963. At that time he was sitting at a table in the Family Court and was in the custody of the East Providence police awaiting the opening of court. Said statements were even further removed in time and place from his earlier inadmissible Pawtucket confessions. According to the evidence in this case, the petitioner apparently responding to questions directed to him by his mother, admitted again that he had killed the said Nancy Ann Frenier. The conversation between petitioner and his mother was overheard by others in the court who testified with respect thereto at petitioner's second trial. Petitioner contended in his appeal to said Supreme Court that such testimony concerning said conversation was inadmissible because he had received no *Escobedo* warnings, and because it was tainted by his earlier confessions. There was

no evidence whatever to support an allegation that petitioner's mother was acting as a police agent at the time. In fact, she triggered said conversation by expressing her belief that the petitioner could not have committed the Frenier murder. The record indicated that the petitioner replied that he had in fact done so. It cannot be said that his mother's belief in his innocence could have led him to believe that his earlier confessions were irrefutable evidence of his guilt.

In my opinion, the evidence clearly supports the rejection by the trial justice and the Supreme Court of petitioner's claim that his admission of guilt to his mother was induced by his earlier inadmissible confessions, made at said Pawtucket police station.

ment that the testimony relating to the colloquy between the petitioner and his mother in said Family Court was properly admissible in evidence during petitioner's retrial. Compare Commonwealth v. Bordner, 432 Pa. 405, 247 A.2d 612 (1968) with Soolook v. State, 447 P.2d 55 (Alaska 1968).

The final issue for determination by this Court is raised by the petitioner's contention that he was not mentally competent on the mornings of January 27, 1963 and January 28, 1963 to volunteer intelligent and trustworthy statements confessing to said murder. An examination of the record on this issue establishes that said trial justice resolved the issue of the petitioner's competency at the time said confessions were made by him at a fair hearing where all the relevant evidence was adequately developed and considered by him. His conclusion that the petitioner was not suffering from any mental disease or disorder which prevented him from making complete and voluntary confessions as he did is clearly supported by the evidence adduced during said hearing.

After a careful review of the transcript of the testimony on the petitioner's motion to suppress, and of the transcript of the testimony during his retrial, it is my considered judgment that the petitioner's rights were fully heard and correctly determined in said proceedings in accordance with federal law. Under the circumstances, the petitioner is not entitled to another plenary hearing in this Court on the same issues. Townsend v. Sain, supra; Leavitt v. Howard, supra; McParlin v. Warden of Adult Correctional Institution, 419 F.2d 7 (1 Cir. 1969).

I find and conclude that the petitioner was not deprived of his constitutional rights during his retrial and that he is not being unlawfully detained by the respondent.

Accordingly, his petition for a writ of habeas corpus must be and it is denied.